SIMEONE et al., Appellants,

v.

GIRARD CITY BOARD OF EDUCATION et al., Appellees.

[Cite as *Simeone v. Girard City Bd. of Edn.*, 171 Ohio App.3d 633, 2007-Ohio-1775.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2006–T–0056.

Decided April 13, 2007.

634

Heben & Associates and Edward J. Heben Jr., for appellants.

Armstrong, Mitchell, Damiani & Zaccagnini, Bruce A. Zaccagnini, and Louis C. Damiani; and Pfau, Pfau & Marando, John C. Pfau, and John A. Ams, for appellees Girard City Board of Education and Dr. Anthony D'Ambrosio.

Gallagher Sharp, Alton L. Stephens, and Timothy J. Fitzgerald, for appellee Prout Boiler, Heating & Welding, Inc.

Davis & Young, L.P.A., and William J. Meola, for appellee Hively Construction Co., Inc.

Thompson Hine L.L.P., Michael L. Hardy, Heidi B. Goldstein, and William J. Hubbard, for appellee Steel Valley Engineering.

Ulmer & Berne, L.L.P., and Charles R. Olsavsky, for appellee Balog, Ricciuti & Partners.

Paul L. Millet and Associates and Paul L. Millet, for appellee Roth Brothers.

---

MARY JANE TRAPP, Judge.

{¶ 1} This case presents the overarching issue of whether the trial court abused its discretion during case management when it issued a "Lone Pine" order and whether dismissal with prejudice in accordance with Civ.R. 41(B)(1) for failure to comply with the Lone Pine order was proper under these circumstances.

{¶ 2} Appellants in this action are 13 students who attended school in the Girard Intermediate School building for the 2000–2001 school year, their parents, and four teachers who worked in that building during the same school year. Appellees are eight individuals and corporations who were involved in the building of the Girard Intermediate School.

*Procedural History*

{¶ 3} Following the closure of the school due to reported health problems,[1] on October 31, 2002, appellants filed a complaint in the Trumbull County Court of Common Pleas, alleging claims of negligence, negligence per se, negligent infliction of emotional distress, intentional tort, intentional infliction of emotional distress, ADA violation, fraudulent nondisclosure, breach of contract, and products liability against defendants-appellees.

{¶ 4} On or about September 24, 2003, appellants served discovery requests upon appellees.

{¶ 5} On December 19, 2003, before appellees responded to the discovery request of appellants, appellees filed a motion for a Lone Pine order[2] to "conserve judicial resources and expedite discovery in this case."

{¶ 6} In turn, on January 29, 2004, appellants filed a motion to compel discovery. Six months later, on June 16, 2004, appellees' Lone Pine motion was granted, and appellants' motion to compel was denied.

{¶ 7} On October 26, 2004, appellants filed a motion for reconsideration to compel discovery and to overturn the Lone Pine order, after submitting affidavits from their medical experts that stated that the experts could not meet the requirements of the Lone Pine order without first receiving discovery from appellees. The court denied these motions on February 24, 2005, and on March 1, 2005, the Lone Pine order was reinstated for case-management purposes.

{¶ 8} On June 13, 2005, appellees filed a motion to dismiss, and on October 20, 2005, appellants filed a combined motion for reconsideration and for sanctions due to spoliation of evidence. On April 6, 2006, appellants' combined motion was denied, and appellees' motion to dismiss under Civ.R. 41(B)(1) for failure to comply with the Lone Pine order was granted. Appellants' claims were dismissed in their entirety, with prejudice.

{¶ 9} Appellants filed this timely appeal and raise the following seven assignments of error:

{¶ 10} "(1) The trial court erred in denying [appellants'] Motion to Compel;

{¶ 11} "(2) The trial court erred in granting [appellees'] Motion for Lone Pine Case Management Order;

---

1. The school was closed after health problems were reported by numerous students and staff. Dayton Daily News (May 30, 2001).

2. A Lone Pine order, as will be more fully explained, is a type of prediscovery case-management order that certain courts have used to manage mass toxic-tort litigation.

{¶ 12} "(3) The trial court erred in dismissing [appellants'] claims in their entirety;

{¶ 13} "(4) The trial erred in dismissing [appellants'] fraud claims;

{¶ 14} "(5) The trial court erred in dismissing [appellants'] negligent infliction of emotional distress claims;

{¶ 15} "(6) The trial court erred in dismissing [appellants'] intentional infliction of emotional distress claims and;

{¶ 16} "(7) The trial court erred in denying [appellants'] motion for sanctions."

{¶ 17} Since appellants' first three assignments of error deal with the overarching issue of whether the trial court abused its discretion in managing discovery by issuing the Lone Pine order and by subsequently dismissing their case with prejudice for failure to comply with this court order under Civ.R.41(B)(1), we will address these issues together.

{¶ 18} For the reasons that follow, we find that the trial court abused its discretion in issuing the Lone Pine order at the stage in the proceedings when there had yet to be any meaningful discovery proceedings and in dismissing the case with prejudice for failure to comply with the order.

{¶ 19} We also reverse the judgment and remand the cause on appellants' seventh assignment of error, which deals with the denial of appellants' motion for sanctions for spoliation. Since we find that the motion to dismiss was premature in this case, reconsideration of the motion for sanctions is necessary. We find that appellants' argument has merit and remand the cause to the trial court to hold a hearing on this motion.

{¶ 20} Since we reinstate appellants' claims, the remaining assignments of error, which deal with the dismissal of the substantive claims of fraud, negligent infliction of emotional distress, and intentional infliction of emotional distress, need not be addressed.

### Standard of Review

{¶ 21} A trial court's decision in a discovery matter is reviewed under an abuse-of-discretion standard. *Masek v. Gehring*, 11th Dist. No. 2001–G–2373, 2002-Ohio-5151, 2002 WL 31160076, at ¶ 8. Abuse of discretion " 'connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the court.' " *Quonset Hut, Inc. v. Ford Motor Co.* (1997), 80 Ohio St.3d 46, 47, 684 N.E.2d 319, quoting *Pembaur v. Leis* (1982), 1 Ohio St.3d 89, 91, 1 OBR 125, 437 N.E.2d 1199, quoting *Klever v. Reid Bros. Express, Inc.* (1951), 154 Ohio St. 491, 43 O.O. 429, 96 N.E.2d 781, paragraph two of the syllabus.

{¶ 22} Whether a trial court has properly dismissed a case with prejudice under Civ.R. 41(B)(1) is also reviewed under an abuse-of-discretion standard. Since dismissal with prejudice is a particularly harsh sanction, we use a "heightened abuse of discretion standard." This is so because we are "reviewing decisions that forever deny a plaintiff a review of a claim's merits." *Jones v. Hartranft* (1997), 78 Ohio St.3d 368, 372, 678 N.E.2d 530. Thus, we review this case under a heightened abuse-of-discretion standard.

{¶ 23} Although the trial court has broad discretion in managing pretrial practice and issuing case-management orders, this discretion is not without its limits. In fact, appellate courts will reverse a discovery order "when the trial court has erroneously denied or limited discovery." *Mauzy v. Kelly Servs., Inc.* (1996), 75 Ohio St.3d 578, 592, 664 N.E.2d 1272, citing 8 Wright, Miller & Marcus, Federal Practice & Procedure (2d Ed.1994), Section 2006. Thus, the appellate court will reverse a decision if a trial court has extinguished a party's right to discovery, if the trial court's decision is improvident, and if it affects the discovering party's substantial rights. *Rossman v. Rossman* (1975), 47 Ohio App.2d 103, 110, 1 O.O.3d 206, 352 N.E.2d 149.

{¶ 24} The goal of modern discovery procedures should be to make civil trials "'less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" Id. at 107, 1 O.O.3d 206, 352 N.E.2d 149, quoting *United States v. Procter & Gamble Co.* (1958), 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077; *Hickman v. Taylor* (1947), 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451. Consistent with this policy[3] is the underlying principle inherent in the Ohio Rules of Civil Procedure, which contain provisions for broad discovery of any matter, not privileged, that is relevant to the subject matter of the pending action. "'In doing so the rules exemplify a policy of affording attorneys every opportunity and advantage in preparing their case before trial.'" (Emphasis omitted.) *Rossman*, 47 Ohio App.2d at 107, 1 O.O.3d 206, 352 N.E.2d 149, quoting *Hlavin v. Plechaty* (1971), 28 Ohio App.2d 43, 45, 57 O.O.2d 69, 274 N.E.2d 570.

### *A Lone Pine Order*

{¶ 25} A Lone Pine order is a type of case-management order that has been used in other jurisdictions[4] to expedite claims and increase judicial efficiency in mass toxic-tort litigation. Under such an order, plaintiffs are required to

---

3. The underlying policy of the Ohio discovery provisions adopts the "liberal discovery philosophy of the Federal rules." Staff Note, Civ.R. 26(B)(1).

4. While federal courts in Ohio have addressed the issue of Lone Pine orders, this appears to be the first time such an order has been addressed at the state appellate court level.

submit reports or affidavits that identify the chemical or substance causing the injury, the specific disease, illness, or injury caused by the substance, and the causal link between the exposure and injury in order to substantiate their health and property-value claims to a reasonable degree of probability or certainty.

{¶ 26} The genesis of such a case-management order was in a case from the New Jersey Superior Court entitled *Lore v. Lone Pine Corp.* (N.J.Super.L.1986), 1986 WL 637507, in which homeowners filed suit against 464 defendant landfill operators for personal injury and property damage alleged to have been caused by the polluted waters arising from the operation of the landfill.

{¶ 27} At a case-management conference, the *Lone Pine* court determined that the plaintiffs had failed to allege a prima facie case in their complaint, and in light of an EPA report presented by the defense that contradicted the plaintiffs' claims, the court issued a case-management order now known as the "Lone Pine" order.

{¶ 28} The Lone Pine order required the plaintiffs to provide documentation with respect to each individual plaintiff's exposure to the alleged toxic substances at or from the site, reports of treating physicians and medical or other experts supporting each individual plaintiff's claim of injury and causation, each individual plaintiff's address for the properties alleged to have declined in value, and reports of real-estate or other experts supporting each plaintiff's claim of diminution in property value.

{¶ 29} The plaintiffs submitted only a report from a realtor, which provided no evidence of contamination of the plaintiffs' property, and no medical records to substantiate any physical problems were submitted. The court granted the defense's motion to dismiss, and the appellate court upheld the dismissal on the grounds that the appellants failed to present a prima facie case on the face of the complaint and failed to comply with the order after being granted an extension of time, under circumstances where the trial court was of the opinion that plaintiffs had filed without good grounds.

{¶ 30} A review of the handful of cases [5] in which state courts have addressed the Lone Pine issue shows that the facts in those cases reveal the difficulty of managing cumbersome and expensive mass toxic-tort litigation cases with extremely large numbers of parties and often unknown defendants. The injuries complained of are largely speculative and unsubstantiated. They have occurred over a long period of time. The cases present multiple theories of recovery and

---

5. For example, see *Kinnick v. Schierl, Inc.* (1995), 197 Wis.2d 855, 541 N.W.2d 803; *Bell v. Exxonmobil Corp.* (Mar. 3, 2005), 1st Dist. No. 01-04-00171-CV, 2005 WL 497295; *Martinez v. San Antonio* (Tex.App.2001), 40 S.W.3d 587; *Acuna v. Brown & Root, Inc.* (C.A.5, 2000), 200 F.3d 335.

unique causation issues, and they require extensive medical and scientific expert testimony. Traditional tort law, in these cases, overlaps with statutory environmental law. Thus, efficiency and case management are cited as the primary justifications of the issuance of Lone Pine orders. (See Burnett, Lone Pine Orders: A Wolf in Sheep's Clothing for Environmental and Toxic Tort Litigation (1998), 14 J.Land Use & Envtl.Law 53, 74.)

{¶ 31} The Lone Pine order has faced harsh criticism because it gives courts the means to ignore existing procedural rules and safeguards. When the Lone Pine order cuts off or severely limits the litigant's right to discovery, the order closely resembles summary judgment, albeit without the safeguards that the Civil Rules of Procedure supply. Furthermore, many Lone Pine orders are inconsistently applied, which further confuses their purpose. Id. at 75.

### The Lone Pine Order in this Case

{¶ 32} On March 1, 2005, the trial court issued its Lone Pine order, which required appellants to do the following within three months from the date of the order:

{¶ 33} Identify with specificity the illnesses, injuries, and conditions claimed by the appellants;

{¶ 34} Identify with specificity each toxin, contaminant, or other foreign substance that appellants were exposed to in the school;

{¶ 35} Provide specific details of the testing relied upon to support the appellants' claims of exposure;

{¶ 36} Provide sworn statements from experts that to a reasonable degree of medical probability, the appellants' illnesses, injuries, and conditions were caused by the exposure; and

{¶ 37} Provide sworn statements from experts that to a reasonable degree of medical probability, the appellants' illnesses, injuries, and conditions could not have been caused but for that exposure.

{¶ 38} Appellees characterize the Lone Pine order as a simple case-management order that was intended to expedite discovery and was "designed to avoid delay, repetition, and undue expense and to prevent an all out fishing expedition." They further argue that it was in the court's discretion to impose a Lone Pine order and that there is clear precedent in Ohio for such an order.

{¶ 39} We reject appellees' contention. Contrary to what appellees would have us believe, there is no well-established precedent in Ohio for a Lone Pine order. Appellees cite the one Ohio Lone Pine case, *Baker v. Chevron USA, Inc.* (S.D.Ohio 2006), No. 1:05–CV–227, 2006 WL 2251821.

{¶ 40} In *Baker*, a magistrate judge for the United States District Court for the Southern District of Ohio, Western Division, was assigned to oversee pretrial and discovery matters in a toxic-tort case. When the magistrate revised the original Lone Pine order to eliminate the expert-physician and property-owner-affidavit requirements, the defense objected.

{¶ 41} The district court judge upheld the revision. The court found that the revision comported with the Rules of Civil Procedure in that it allowed the "[d]efendant to obtain the information it need[ed] to effectively rebut [p]laintiffs' claims without imposing undue burdens on [p]laintiffs." Id. at 9. Thus, the court held that a Lone Pine order may be modified as discovery proceeds in order to allow for fairness and judicial efficiency to both parties. A modification was needed in *Baker* because the original Lone Pine order imposed too heavy a burden on plaintiffs, which prevented them from complying.

{¶ 42} We find that the issuance of the Lone Pine order at the stage in the proceedings when there had yet to be any meaningful discovery, followed by the dismissal of the case with prejudice for failure to comply with the order, was an abuse of discretion in this case.

{¶ 43} A review of the record fails to demonstrate that appellants were trying to thwart discovery. Rather, appellants timely responded to appellees' discovery requests. Appellants sent discovery requests to appellees, which were never answered. Appellees' response to the discovery requests was to file a motion for a Lone Pine order. Moreover, appellants' motion to compel discovery was denied.

{¶ 44} Appellees allege that the Lone Pine order was necessary because "[t]ime and time again, the Trial Court granted Appellants leave to file pleadings after filing deadlines had been missed. Time and time again, the Trial Court entertained Appellants' Motions for Reconsideration."

{¶ 45} The record does not support appellees' assertions. The record reveals that appellant did file for several extensions; however, appellees filed just as many, if not more. Nowhere does the record reveal that appellants were late in filing motions. However, we do note that appellees themselves filed a motion one day late on November 19, 2004.

{¶ 46} The timeline of this case is of concern because it is apparent that appellants were not given the full range and benefit of discovery before the Lone Pine order was issued. In most of the Lone Pine cases we have reviewed in coming to this conclusion, the Lone Pine order was issued only after one party was refusing to comply with discovery requests or when the plaintiffs failed to set forth a prima facie claim. These circumstances are not present in this case.

{¶ 47} The most disturbing factor in this case is that the record before us indicates that there was no discovery provided by appellees at any time period during the pendency of the case. The fact that documents may have been provided to appellants before the suit is not an acceptable substitute for formal discovery proceedings. Once the Lone Pine order was in place and appellants' motion to compel was denied, appellants were effectively prevented from any type of discovery with which to build their case and proceed forward in order to meet the requirements of the order.

{¶ 48} The trial court's own case-flow management rule cautions that "it is important that the court supervise the progress of all cases from filing to termination in a process that is fundamentally fair, and neither too deliberate nor too hasty." Loc.R. 10(A) of the Trumbull County Court of Common Pleas.

{¶ 49} By issuing a Lone Pine order when it did, the trial court put the cart before the horse, and in its effort to move along a case that had been before it once and was dismissed, the court bypassed the orderly processes provided by the civil rules, which are designed both to bring the meritorious case to a conclusion and to derail the meritless case.

{¶ 50} A meritless case may be initially challenged through a Civ.R. 12(B) motion. No Civ.R. 12(B) motion was filed in this case.

{¶ 51} If the matter survives that test, discovery is to proceed, and the parties and the court have many tools at their disposal to address even the most difficult discovery issues, including the appointment of a special master or magistrate to oversee discovery.

{¶ 52} Should problems arise in discovery that cannot be resolved between the parties, a motion for a protective order may be filed. Appellees failed to file such a motion.

{¶ 53} The timing of the issuance of the Lone Pine order in this case effectively and inappropriately supplanted the summary judgment procedure provided in Civ.R. 56. In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion, identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Rule 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If

the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Rule 56(E) to set forth specific facts showing that there is a genuine issue for trial, failing which, summary judgment, if appropriate, shall be entered against the nonmoving party based on the principles firmly established in Ohio for some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.

{¶ 54} The Supreme Court in *Dresher*, 75 Ohio St.3d 280, 662 N.E.2d 264, went on to hold that when *neither* the movant nor the nonmovant provides evidentiary materials demonstrating that there are no material facts in dispute, the movant is not entitled to a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion and of "identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Id. at 296, 662 N.E.2d 264.

{¶ 55} In *Mitseff*, 38 Ohio St.3d 112, 526 N.E.2d 798, the Supreme Court held that a party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond. Accordingly, the court made it clear that the party moving for summary judgment bears the burden of affirmatively demonstrating with respect to every essential issue in each count of the complaint that there is no genuine issue of fact even with regard to the issues on which the plaintiffs would have the burden of proof should the case go to trial.

{¶ 56} The summary judgment procedure also allows for an extension of time to respond when more discovery is needed. See Civ.R. 56(F). The controlling case is *Tucker v. Webb* (1983), 4 Ohio St.3d 121, 4 OBR 367, 447 N.E.2d 100, in which the Supreme Court of Ohio reversed the decision of the court of appeals affirming the trial court's granting of a motion for summary judgment on the basis that the trial court should have given the appellant more time for discovery pursuant to Civ.R. 56(F) and that summary judgment was improper prior to that discovery.

{¶ 57} Thus, in the face of a summary judgment motion, if a plaintiff is required to obtain affidavits from expert witnesses to successfully oppose a defendant's motion for summary judgment, that plaintiff should be given adequate opportunity to do so after the filing of the motion for summary judgment because of the expense and difficulty in securing any expert's affidavit.

{¶ 58} As the court of appeals held in *Whiteleather v. Yosowitz* (1983), 10 Ohio App.3d 272, 10 OBR 386, 461 N.E.2d 1331, Civ.R. 56(F) authorizes the trial court to delay decision on a summary judgment motion while the nonmoving party

**646**

gathers necessary rebuttal data, and discretion should be exercised liberally in favor of the nonmoving party who proposes any reasonable interval for the production of those materials.

{¶ 59} Appellants herein were denied the procedural protections of Civ.R. 56, because the court prematurely issued a Lone Pine order, which, in effect, became a motion of summary judgment, and the Lone Pine order lifted the burden placed upon appellees to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that appellants have no evidence to support their claims.

### *Dismissal With Prejudice*

█ {¶ 60} Proper factors for consideration in a Civ.R. 41(B)(1) dismissal with prejudice include the drawn-out history of the litigation, including a plaintiff's failure to respond to interrogatories until threatened with dismissal, and other evidence that a plaintiff is deliberately proceeding in a dilatory fashion or has done so in a previously filed and voluntarily dismissed action. *Jones,* 78 Ohio St.3d at 372, 678 N.E.2d 530, referencing *Link v. Wabash RR. Co.* (1962), 370 U.S. 626, 633–635, 82 S.Ct. 1386, 8 L.Ed.2d 734; *Indus. Risk Insurers v. Lorenz Equip. Co.* (1994), 69 Ohio St.3d 576, 635 N.E.2d 14, syllabus. None of these actions are demonstrated in the record before us in the instant case.

{¶ 61} Appellees assert that appellants had enough documentation from public records from which they could comply, yet appellants argue that they cannot meet their burden of proof without proper discovery. Appellants' experts requested various tests and other documents that are in the control of appellees. Their experts claim that they cannot comply with the Lone Pine order without a review of these documents. It would follow that appellants should be afforded discovery if they have set forth a prima facie case in their complaint.

{¶ 62} Nor is there anything unusual, as appellees suggest, in filing two or more cases related to the same matter in mass toxic-tort cases. Often, the same facts in these cases give rise to many different issues that need to be litigated. This is not always a sign that appellants are filing frivolous claims, but rather is a method of overcoming the difficult hurdles this type of complex litigation presents.

{¶ 63} We find the decision of the United States District Court for the Eastern Division of Kentucky in *In re 2004 DuPont Litigation & In re 1995 DuPont Litigation* (Mar. 8, 2006), E.D. Ky. Nos. 04-229-DLB, 05-28-DLB, 05-49-DLB, 05-91-DLB, 05-185-DLB, 05-204-DLB, 05-205-DLB, 05-206-DLB, 04-191-DLB and 05-207-DLB, most instructive in determining the inequities inherent in the trial court's granting of the Lone Pine order in this case. The court was handling two cases under the same pretrial schedule, even though the cases dealt with two

different chemical releases at two different time periods. The defendants filed a motion for a Lone Pine order to require the plaintiffs to provide certain information to the defendant before proceeding further on the 2004 case. However, defendants' motion for a Lone Pine order was declared premature. That court balanced the equities and found as follows: "[B]ased on the representations of plaintiffs' counsel that all outstanding responses will soon be forthcoming, and to avoid duplication of responses to requests previously promulgated by defendant, the court will deny defendant's request. Should defendant prove unable to obtain the information it seeks from plaintiffs' responses to written discovery, the court may re-examine the necessity of a Lone Pine Order." Id. at 6.

{¶ 64} Indeed, the Ohio Supreme Court has stated that " '[j]udicial discretion must be carefully—and cautiously—exercised before this court will uphold an outright dismissal of a case on purely procedural grounds.' " Quonset, 80 Ohio St.3d at 48, 684 N.E.2d 319, quoting DeHart v. Aetna Life Ins. Co. (1982), 69 Ohio St.2d 189, 192, 23 O.O.3d 210, 431 N.E.2d 644. "In the context of dismissing a case, Ohio courts have held that '[a]n abuse of discretion will be found where the trial court has not considered other less drastic alternatives.' " Nozik v. Dalheim (1998), 11th Dist. No. 96–L–205, 1998 WL 156785, *2, quoting Ina v. George Fraam & Sons, Inc. (1993), 85 Ohio App.3d 229, 231, 619 N.E.2d 501. " 'The law favors deciding cases on their merits unless the conduct of a party is so negligent, irresponsible, contumacious, or dilatory as to provide substantial grounds for a dismissal with prejudice for a failure to prosecute or obey a court order.' " Nozik at 5–6, quoting Schreiner v. Karson (1977), 52 Ohio App.2d 219, 222–223, 6 O.O.3d 237, 369 N.E.2d 800.

{¶ 65} We find that the trial court abused its discretion in prematurely issuing the Lone Pine order in this case, if at all, as it is questionable whether there is any authority for such an order under Ohio law. We also find that the trial court abused its discretion in dismissing appellants' claims in their entirety with prejudice under Civ.R. 41(B)(1) for failure to comply with the Lone Pine order, since there is nothing in the record that suggests that the trial court considered less severe sanctions and nothing to indicate why appellants' claims should be dismissed in their entirety. The record does not reflect circumstances that are so "negligent, irresponsible, contumacious, or dilatory" that dismissal with prejudice is warranted.

### Spoliation Sanctions

{¶ 66} Appellants, in their seventh assignment of error, argue that the court erred in denying their motion for sanctions for spoliation of the evidence. Specifically, appellants argue that relevant evidence was intentionally, negligently, or inadvertently destroyed or discarded by appellees, which resulted in prejudice to appellants on the issue of causation.

{¶ 67} Appellants allege that appellees were on proper notice that evidence concerning the faulty materials used in constructing the school should have been preserved. Specifically, appellants allege that on June 1, 2001, before litigation commenced and shortly after the closure of the school, their counsel sent correspondence to appellees specifically cautioning them to preserve the evidence. Appellants claim that appellees did not provide any of this evidence for their inspection either before or after the commencement of this suit. Appellees never denied this allegation, nor did they respond to appellants' motion for spoliation sanctions. Instead, appellees responded with a motion to dismiss. The court adopted appellees' proposed judgment entry that granted the motion to dismiss for not complying with the Lone Pine order and further found the motion for reconsideration "not well taken."

{¶ 68} We find that appellants' argument has merit and, therefore, we reverse the judgment and remand the cause to the court to not only reinstate appellants' claims, but also to hold a hearing on the motion for spoliation and to determine whether evidence was indeed destroyed and sanctions are warranted.

{¶ 69} We review a denial of a motion for sanctions for the spoliation of evidence under an abuse-of-discretion standard. *Cincinnati Ins. Co. v. Gen. Motors Corp.* (Oct. 28, 1994), 6th Dist. No. 94–OT–017, 1994 WL 590566, fn. 3. A motion for sanctions for spoliation of the evidence is properly filed under Civ.R. 37. The proponent must first establish that (1) the evidence is relevant, (2) the offending party's expert had an opportunity to examine the unaltered evidence, and (3) even though the offending party was put on notice of impending litigation, this evidence was intentionally or negligently destroyed or altered without providing an opportunity for inspection by the proponent. *Cincinnati Ins. Co.* at 11, citing *Hirsch v. Gen. Motors Corp.* (1993), 266 N.J.Super. 222, 628 A.2d 1108, 1118.

{¶ 70} If the court finds that relevant evidence was, indeed, destroyed, then the court has the power to fashion a just remedy. *American States Ins. Co. v. Tokai–Seiki (H.K.), Ltd.* (1997), 94 Ohio Misc.2d 172, 175, 704 N.E.2d 1280.

{¶ 71} Even if the court finds that the evidence was not deliberately destroyed, "negligent or inadvertent destruction of evidence is sufficient to trigger sanctions where the opposing party is disadvantaged by the loss." Id. at 176, 704 N.E.2d 1280, citing *Farley Metals, Inc. v. Barber Colman Co.* (1994), 269 Ill.App.3d 104, 206 Ill.Dec. 712, 645 N.E.2d 964, 968. "[T]he intent of the spoliator in destroying or altering evidence can be inferred from the surrounding circumstances. In other words, intent can be inferred from the fact that the evidence was destroyed prior to the commencement of any litigation against the defendant and there is only a potential for litigation. Therefore, the [spoliator] is

under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Cincinnati* at 9, citing *Hirsch,* 266 N.J.Super. 222, 628 A.2d at 1130.

{¶ 72} Furthermore, "[w]here the loss of evidence is belated, a court should not dwell on intent but, rather, focus on the importance of information legitimately sought and which is unavailable as a result of the destruction of evidence." *Am. States Ins. Co.,* 94 Ohio Misc.2d at 176, 704 N.E.2d 1280.

{¶ 73} The court must balance "[t]he intent of the offending party, the level of prejudice, and the reasonableness of the offending party's action * * * in fashioning a just remedy. The relative importance of the information denied the opposing party bears directly on [the] reasonableness of the offending party's action and the resulting prejudice." Id.

{¶ 74} If the court does find that spoliation of evidence did occur because the offending party failed to preserve the evidence, then "the court must impose a sanction that is proportionate to the seriousness of the infraction under the facts of this particular case." Id.

{¶ 75} We find that the court abused its discretion in denying appellants' motion for sanctions for spoliation of the evidence, since it is not clear from the judgment entry whether the court properly considered the motion or whether evidence was destroyed. This is especially troublesome under these circumstances, where appellees have not responded to any of appellants' discovery requests and have not denied this allegation. In addition to reinstating appellants' claims, we reverse the court's denial of this motion and remand the cause for the court to determine whether evidence was indeed destroyed and, if so, what sanctions are warranted.

{¶ 76} We reverse the judgment of the trial court, and this cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

O'Neill and O'Toole, JJ., concur.