Fred L. MANNING, et al., Plaintiffs

v.

ARCH WOOD PROTECTION,
INC., et al., Defendants.

Civil Action No. 13–127–HRW–CJS.

United States District Court,
E.D. Kentucky,
Northern Division,
at Ashland.

Signed Aug. 21, 2014.

Matthew Joseph Schad, Schad & Palmer, PC, New Albany, IN, Richard L. Masters, Masters, Mullins & Arrington, Louisville, KY, Robert S. McCrea, McCrea & McCrea, Bloomington, IN, for Plaintiffs.

Anthony G. Hopp, Jeremy S. Goldkind, Robert L. Shuftan, Edwards Wildman Palmer LLP, Chicago, IL, James Michael Inman, Ronald L. Green, Green, Chesnut & Hughes PLLC, Lexington, KY, Anne K. Guillory, Robert M. Croft, Jr., Dinsmore & Shohl, LLP, Michael Scott Jackson, Robert D. Bobrow, Robert Estes Stopher, David Eugene Crittenden, Boehl, Stopher & Graves, Louisville, KY, for Defendants.

### MEMORANDUM ORDER

CANDACE J. SMITH, United States Magistrate Judge.

This matter is before the Court on Motion of Defendants Arch Wood Protections, Inc. ("Arch Wood"), Osmose, Inc. ("Osmose"), Chemical Specialties, Inc. ("CSI"), Koppers Inc. ("Koppers") and T.R. Miller Mill Co., Inc.'s ("T.R. Miller") (collectively "Defendants") to Require Plaintiffs to Produce an Expert Opinion on General Causation Before Discovery Commences ("*Lone Pine* Motion") and Defendants' Motion for Oral Argument on their *Lone Pine* Motion. (R. 43, 44). Plaintiffs filed a Response (R. 47) to which Defendants filed a Reply (R. 50). Having all relevant documents before the Court, the matter is now ripe for consideration. For the reasons that follow, both Motions will be **denied**.[1]

## I. Background

Plaintiff Fred Manning worked as a line mechanic on a line crew for Kentucky Power Company (Kentucky Power) from May 16, 1990, until January 7, 2013. (*See* R. 1, at ¶ 12). Manning claims that during his employment at Kentucky Power he was exposed to toxic levels of arsenic contained in chromated copper arsenate (CCA)—a substance used to preserve the wood in utility poles and cross-arms. (*Id.* at ¶¶ 3, 13). He was allegedly exposed to CCA while handling, sawing, and drilling CCA-treated wood as part of his employment duties, as well as through fighting fires on the CCA-treated utility poles. (*Id.* at ¶ 14). He claims he "was poisoned" by his exposure to arsenic in the CCA-treated utility poles and as a result has suffered health problems. (*Id.* at ¶¶ 13, 33, 47). He specifically alleges that he suffers from such symptoms as: "headache, confusion, visual changes, heart palpitations, nose bleeds, dizziness, joint pain, nausea, skin cancer, severe sinus disease, bloody stools, hearing loss, allergic rhinitis, loss of sensitivity in skin, bronchitis, fatigue, polyps in nose, shortness of breath, cough, depression, anxiety, suicidal thoughts, metallic taste in mouth, and vomiting." (*Id.* at ¶ 33).

Plaintiffs allege that Defendants Arch Wood, Osmose and CSI manufactured CCA. (*Id.* at ¶ 2). They further allege that from 1981 until 2013, Defendants Koppers, Langdale Forest Products Co., and T.R. Miller purchased the CCA preservative from Arch Wood, Osmose and CSI to treat utility poles and cross-arms that were sold to Kentucky Power. (*Id.* at ¶¶ 3, 45). Plaintiffs claim that Defendants knew of the health hazards caused by CCA exposure, but failed to warn of the dangers. (*Id.* at ¶¶ 15, 17–28, 30, 31–38, 46–47).

This Court has three similar cases filed by former Kentucky Power Company em-

---

1. Defendants have requested oral argument pursuant to Joint Local Rule 7.1(f), which is discretionary. Oral argument is not necessary to determine the pending Motion, as the Motion is not based on a dispute of fact, and the issue presented has been thoroughly briefed.

ployees against the Defendants, each claiming injury as a result of work-related exposure to the CCA-treated poles. *See Stevens v. Arch Wood Protection, Inc.*, No. 0:12–46–HRW; *McCarty v. Arch Wood Protection, Inc.*, No. 0:11–109–HRW; *and Brown v. Arch Wood Protection, Inc.*, No. 0:13–61–HRW. Defendants filed a *Lone Pine* Motion in three of the four cases.[2] In *Manning* and *Brown*, Defendants ask that before discovery commences this Court require Plaintiffs to present proof that the CCA-treated wood caused Plaintiffs' injuries. In *Stevens*, Defendants seek such an order with discovery in progress, the discovery deadline having been extended until September 16, 2014. Defendants submit that if Plaintiffs can, in fact, establish causation, the causation information should be currently available since Plaintiffs' counsel's obligations under Rule 11 of the Federal Rules of Civil Procedure require them to perform an investigation of causation prior to filing suit. In support of their *Lone Pine* Motions, Defendants argue that the Plaintiffs cannot establish causation and yet Defendants will be required to incur significant expenses in order to effectively participate in discovery, only to end up receiving summary judgment when Plaintiffs fail to prove causation (R. 43–1, at 3).

## II. Analysis

■ *Lone Pine* motions were first recognized in the Superior Court of New Jersey case *Lore v. Lone Pine*, L–33606–85, 1986 WL 637507, at *1 (N.J.Super.Ct. Law Div. Nov. 18, 1986). In that case, multiple homeowners sued 464 defendants for personal injury and property damage result-

ing from polluted waters arising from the operation of Lone Pine's landfill. *Id.* Due to the large number of parties, the court determined that extraordinary case organization was required and issued a case management order requiring plaintiffs to put forth expert evidence that their personal injuries were caused by defendants' landfill. *Id.* Plaintiffs failed to comply with the case management order, and the case was subsequently dismissed. Consequently, the concept of using case management orders to require plaintiffs to set forth evidence of causation early in a case was recognized and became known as *Lone Pine* orders.

■ *Lone Pine* orders are used to weed out frivolous claims and to "assist in the management of complex issues and potential burdens on defendants and the court in mass tort litigation." *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. 249, 255 (S.D.W.Va.2010); *see also Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604 n. 2 (5th Cir.2006) (stating that *Lone Pine* orders are "designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim"). In evaluating motions for *Lone Pine* orders, courts have found a review of five factors to be relevant: 1) the posture of the action; 2) any peculiar case management needs of the action; 3) external agency decisions that may bear on the case; 4) the availability, by statute or rule, of other procedural devices; and 5) the type of injury alleged and its cause.[3] *See, e.g., In re Fosamax*, No. 06–MD–1789, 2012 WL

---

**2.** Defendants did not file a *Lone Pine* motion in the *McCarty* case.

**3.** In their Motion, Defendants cite *Pinares v. United Techs. Corp.*, 10–80883–CIV, 2011 WL 240512 (S.D.Fla. Jan. 19, 2011) as authority

for four factors they contend should be used to analyze a *Lone Pine* motion. While some of the factors involve similar analysis as the five-factor analysis above, the *Pinares* opinion does not actually set forth a four-factor test.

5877418, at *2 (S.D.N.Y. Nov. 20, 2012); *Kamuck v. Shell Energy Holdings GP, LLC,* No. 4:11–cv–1425, 2012 WL 3864954, at *4 (M.D.Pa. Sept. 5, 2012); *In re Digitek,* 264 F.R.D. at 256. Analyzing these five factors in the case at bar results in a finding that Defendants' Motion should be denied.

■ Consideration of the first factor, posture of the action, supports denial of the Motion. Generally, courts have been reluctant to grant *Lone Pine* motions before any meaningful discovery has been conducted. *See Roth v. Cabot Oil & Gas Corp.,* 287 F.R.D. 293, 298–99 (M.D.Pa. 2012) (finding *Lone Pine* order not appropriate given early procedural posture of case and no showing procedures available in rules were not adequate for case); *Strudley v. Antero Res. Corp.,* —— P.3d ——, ——, No. 12–CA–1251, 2013 WL 3427901, at *6 (Colo.Ct.App. July 3, 2013) (finding an abuse of discretion to grant *Lone Pine* order before any discovery conducted), *cert. granted,* 2014 WL 1357327 (Colo. Apr. 7, 2014); *Simeone v. Girard City Bd. of Educ.,* 171 Ohio App.3d 633, 872 N.E.2d 344, 351 (2007) (holding that "issuance of [a] *Lone Pine* order at the stage in the proceedings when there had yet to be any meaningful discovery, followed by the dismissal of the case with prejudice for failure to comply with the order, was an abuse of discretion").

The *Simeone* court noted that the vast majority of cases granting *Lone Pine* motions did so only when there was a refusal to comply with discovery requests or when plaintiffs failed to allege a *prima facie* case. *Id.* In *Simeone,* the Ohio appellate court held that the trial court erred in granting defendant's *Lone Pine* motion because plaintiffs had not yet had the oppor-tunity to conduct discovery, and no unique circumstances were present such as a refusal to comply with discovery or a failure to present a *prima facie* claim. *Id.* at 643, 872 N.E.2d 344. Instead, *Lone Pine* motions are more likely to be granted when the parties have engaged in discovery and the motion is filed at a time when plaintiffs should have already had the opportunity to obtain information regarding the cause of their injuries. *See In re Vioxx Prod. Liab. Litig.,* 557 F.Supp.2d 741, 744 (E.D.La. 2008) (found *Lone Pine* order appropriate given advanced stage of MDL, much discovery having already taken place).

Here, as in *Strudley* and *Simeone,* there has been no meaningful discovery and the Plaintiffs have not had time to gather all of their evidence. This is juxtaposed by *In re Vioxx,* where the defendant's *Lone Pine* motion was granted because the case was in its advanced stages and the plaintiff should have already had the requested information. To the extent Defendants may argue Plaintiffs have the benefit of discovery obtained in *McCarty,* Defendants admit in their Reply (R. 50) that each *Lone Pine* motion should be determined on a case-by-case basis and that effect of the exposure on each Plaintiff may not be the same.

Further, discussion of Defendants' presentation of a Rule 11 argument is appropriate at this point, as it seems to fit best within this first factor. Defendants contend they are merely asking for information that Plaintiffs should already have as a result of counsel's pre-suit investigation obligations under Federal Civil Rule 11.[4] In support, Defendants cite to *Acuna v. Brown & Root Inc.,* 200 F.3d 335, 337 (5th Cir.2000). The *Acuna* plaintiffs appealed

4. Based upon Defendants' proposed draft *Lone Pine* order, this pre-suit information would include a Rule 26(a)(2)-compliant ex-pert report or at least the ability to produce such a report in short order. (*See* R. 43–3).

the trial court's dismissal of their claims, arguing the *Lone Pine* order requiring expert support for the details of each plaintiff's claim was too high of a burden to impose pre-discovery.[5] *Id.* at 340. The Fifth Circuit disagreed, noting the *Lone Pine* order was within the trial court's discretion as a method to manage discovery in a complex case that involved over 1,600 plaintiffs and where the complaint failed to provide notice to either the court or defendants as to how many instances of specific diseases were being claimed or which facilities were alleged to have been the cause of the exposure. The Fifth Circuit held that the trial court did not err in dismissing plaintiffs' claims for failing to comply with its *Lone Pine* order because the *Lone Pine* order merely required information that the plaintiffs should have had before filing suit pursuant to counsels' obligations under Rule 11. Specifically, the court noted that each plaintiff should have had at least some information regarding the nature of his injuries, the circumstances of the alleged exposure, and the basis for believing defendants were responsible. *Id.*

■ Unlike *Acuna,* the case at bar does not involve hundreds of parties, and the Complaint contains sufficient allegations to place Defendants on notice of the nature of Mr. Manning's illnesses, the circumstances of his alleged exposure, and the basis for Plaintiffs' belief that Defendants are responsible for his injuries. Rule 11 provides that in filing a pleading with the Court, counsel certifies that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3). Rule 11 does not require conclusive proof of causation prior to filing suit.[6] Instead, "[i]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." *Ridder v. City of Springfield,*

5. The *Lone Pine* order required plaintiffs to submit expert affidavits specifying the injuries or illnesses suffered by each plaintiff that were caused by the alleged uranium exposure, the materials or substances causing the injury, and the facility thought to be the source of exposure. *Acuna,* 200 F.3d at 338.

6. Defendants also cite *Albright v. Upjohn Co.,* 788 F.2d 1217 (6th Cir.1986), a pharmaceutical products liability action, for the proposition that the proposed *Lone Pine* order in this case requests information counsel should have gleaned from a proper presuit investigation under Rule 11. *Upjohn,* however, is distinguishable. In *Upjohn,* the plaintiff alleged her injury was caused by ingesting certain pharmaceuticals as a child and she named nine manufacturers, including Upjohn, as having manufactured the drugs in question. Discovery, however, revealed that plaintiff had medical records in her possession presuit that identified the specific drugs she ingested, which drugs were not manufactured by Upjohn. Upjohn filed a motion for summary judgment, and instead of responding to the motion, plaintiff filed an amended complaint that no longer named Upjohn as a defendant. The trial court granted Upjohn's motion for summary judgment, but denied its later filed motion for Rule 11 sanctions. Upjohn appealed the court's denial of its request for sanctions. The Sixth Circuit held that Rule 11 sanctions were proper, finding counsel's prefiling investigation was insufficient because it did not disclose that the claim against Upjohn was "well grounded in fact"—since medical records in plaintiff's possession identified products not manufactured by Upjohn— nor did the investigation reveal any likelihood that additional records implicating Upjohn's product would be located that plaintiff could not have located prefiling. The court did not hold that causation evidence must be conclusively established prefiling. Instead, it awarded sanctions where discovery revealed evidence plaintiff obtained presuit excluded Upjohn, and there was no basis for finding the claim against it was "well grounded in fact," as Rule 11 required at that time.

109 F.3d 288, 293 (6th Cir.1997) (citing Fed.R.Civ.P. 11 (Advisory Committee Notes (1993 Amendments))); *see also Merritt v. Int'l Ass'n of Machinists & Aerospace Workers,* 613 F.3d 609, 626 (6th Cir. 2010) ("[T]he reasonable inquiry under Rule 11 is not a one-time obligation ... plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11.") (quoting *Runfola & Assoc., Inc. v. Spectrum Reporting II, Inc.,* 88 F.3d 368, 374 (6th Cir.1996)). The Court reminds counsel of this continuing obligation. Even if the Court agreed that counsel's prefiling obligations under Rule 11 require they have an expert report on general causation in their possession or quickly available, this case is not so extraordinary that disclosure of this information outside the Court's general sequence for such disclosures should be compelled.

The second factor, whether the case has peculiar case management needs, also supports denial of the Motion. In most of the cases where courts grant *Lone Pine* motions, there are hundreds of plaintiffs and/or hundreds of defendants, and the order is entered as a method of managing complex and very burdensome discovery in mass tort litigation. *See Steering Committee v. Exxon Mobil Corp.,* 461 F.3d 598, 604 n. 2 (5th Cir.2006) (*Lone Pine* order issued in matter where hundreds of cases consolidated); *Acuna v. Brown & Root Inc.,* 200 F.3d 335, 337 (5th Cir.2000) (*Lone Pine* order issued where there were 1,600 plaintiffs suing over 100 defendants); *Adams v. Cooper Indus., Inc.,* No. 5:03–cv–476, at docket entry 1171 (E.D.Ky. June 17, 2009) (*Lone Pine* order entered in case with several hundred original plaintiffs and after summary judgment entered for defendants on bellwether plaintiffs' cases because insufficient evidence of causation after five years of litigation and

discovery); *Baker v. Chevron USA, Inc.,* No. 1:05–cv–227, 2007 WL 315346, at *1 (S.D.Ohio Jan. 30, 2007) (*Lone Pine* order issued where case brought by 360 plaintiffs); *Lone Pine,* 1986 WL 637507, at *1 (*Lone Pine* order issued where case involved 464 defendants); *see also In re Digitek,* 264 F.R.D. at 249 (where court denied motion for *Lone Pine* order even where involved MDL with hundreds of plaintiffs).

In *Ramirez v. E.I. Dupont De Nemours and Co.,* a defendant filed a *Lone Pine* motion despite the fact that there was only one plaintiff and one defendant. 809–CV–321–T–33TBM, 2010 WL 144866 (M.D.Fla. Jan. 8, 2010). The court denied the motion, finding that the motion was "patently unwarranted" since the case was not part of a mass tort litigation, but instead involved only two parties. *Id.; see also Kamuck,* 2012 WL 3864954 (denying defendant's *Lone Pine* motion in case with one plaintiff and three defendants, finding procedural tools in federal rules sufficient to manage case). Similarly, the number of parties in the case at bar does not support granting the Motion. Whereas most *Lone Pine* motions have been granted when there are hundreds of parties involved, Defendants here seek to have a *Lone Pine* order issued when there are only six plaintiffs (in four separate cases) and six defendants.

Defendants cite *Pinares v. United Technologies Corp.,* 10–80883–CIV, 2011 WL 240512 (S.D.Fla. Jan. 19, 2011), to support their argument that *Lone Pine* orders are issued in cases involving few parties. However, *Pinares* is not analogous to the current case. Though the *Pinares* court granted the *Lone Pine* motion despite there being only two plaintiffs and one defendant, it did so because the companion case, which had a *Lone Pine* order im-

posed,[7] was a putative class action involving hundreds of plaintiffs and involved the same plaintiffs' counsel with similar allegations and claims. *Id.* at *1. Such an exception should not be made here. The only related cases are the three cases cited above. None of these similar cases are class actions or involve any more parties than the case at hand. Thus, *Pinares* does not support granting Defendants' *Lone Pine* Motion.

The third factor involves looking to external agency decisions to see if there are any that impact the merits of the case. In some toxic tort cases, independent agencies have released information that can act as proof of general causation or, conversely, as evidence against it. *See McManaway v. KBR, Inc.*, 265 F.R.D. 384, 385 (S.D.Ind.2009) (stating "[a] *Lone Pine* order should issue only in an exceptional case and after the defendant has made a clear showing of significant evidence calling into question the plaintiffs' ability to bring forward necessary medical causation and other scientific information").

Here, Defendants attach to their Motion a document purporting to be an arsenic fact sheet from the World Health Organization (WHO). (R. 43–2). This document does not, however, support Defendants' statement that none of Mr. Manning's symptoms or medical conditions are recognized by any medical authority as being caused by exposure to CCA-treated wood or arsenic. (R. 43–1, at 2). Instead, the document states that industrial processes, including use of arsenic in wood preservatives, is a source of exposure to inorganic arsenic. (R. 43–2, at 1). The document

further provides certain acute and long-term effects associated with arsenic exposure, emphasizing effects caused by exposure through ingestion, but also notes that symptoms and signs caused by long-term exposure differ between individuals and that "there is no universal definition of the disease caused by arsenic." (*Id.* at 2). In addition, the WHO document specifically provides that acute and long-term effects of arsenic poisoning include vomiting, skin conditions and skin cancer. (R. 43–2, at 2). Plaintiffs list these three symptoms, among others, in their Complaint. (R. 1, at ¶ 33). Defendants have not made a clear showing of significant evidence that calls into question Plaintiffs' ability to bring forward necessary medical causation evidence. Thus, this factor also weighs in favor of denying the Motion.

The fourth factor, whether there are other procedures available under the federal rules or by statute to effectively manage the case, also supports denying the Motion. In *In re Digitek*, the court held that "resorting to and crafting a *Lone Pine* order should only occur where existing procedural devices explicitly at the disposal of the parties by statute and federal rule have been exhausted or where they cannot accommodate the unique issues of this litigation." 264 F.R.D. at 259; *see also Roth*, 287 F.R.D. at 298–99. Some courts have found that entering a *Lone Pine* order before discovery denies the nonmoving party the protection of the civil rules, and may in effect act as summary judgment by requiring a plaintiff to prove the legitimacy of his claims before discovery commences.[8] *See McManaway*, 265

---

7.  *See Adinolfe v. United Techs. Corp.*, No. 10–80840–CIV, at docket entry 40, 2011 WL 240504 (S.D.Fla. Jan. 18, 2011) (*Lone Pine* order issued because plaintiffs failed to allege that their properties were, in fact, even contaminated).

8.  Defendants' proposed *Lone Pine* order supports this analysis, as it provides that "[i]f Plaintiffs fail to produce an expert report in compliance with section 2 of this Order, the case will be dismissed with prejudice." (R. 43–3, at 2). Thus, the proposed *Lone Pine*

F.R.D. at 388; *Simeone*, 872 N.E.2d at 351. This factor also relates to the reluctance of courts to grant *Lone Pine* motions before the start of discovery because, as mentioned above, a premature *Lone Pine* order precludes the nonmoving party from conducting full discovery. *Id.; see also Roth*, 287 F.R.D. at 298–99 (denying a *Lone Pine* motion so that discovery could be conducted); *In re Fosamax*, 2012 WL 5877418 (granting a limited *Lone Pine* motion when extensive discovery completed in companion MDL cases showed the capacity for a large number of "meritless cases").

Defendants have not demonstrated that existing procedural devices provided by the federal rules have either been exhausted or shown to be ineffective in accommodating the needs of this case. The claims here are not so extraordinary as to require the procedure of a *Lone Pine* order.[9] Instead, Plaintiffs should be afforded an opportunity to engage in discovery in order to discover evidence that may support their claims. Upon the completion of discovery, Defendants can move for summary judgment if they wish. It is at this point that the court can consider whether the case should be dismissed for lack of evidence of general causation. Accordingly, since other procedural tools are available for the parties, granting a *Lone Pine* order would not be appropriate. *See Hagy v. Equitable Prod. Co.*, No. 2:10–cv–01372, 2012 WL 713778, at *4 (S.D.W.Va. Mar. 5, 2012) ("While *Lone Pine* orders have proven useful at times in complex litigation, this court has previously explained that '[g]iven a choice between a '*Lone Pine* order' created under the court's inherent case management authority and available procedural devices such as summary judgment, motions to dismiss, motions for sanctions and similar rules, I believe it more prudent to yield to the consistency and safeguards of the mandated rules.'") (quoting *In re Digitek*, 264 F.R.D. at 259).

Finally, the fifth factor, the type of injury alleged and its cause, also does not favor granting the Motion. As in *In re Digitek*, it is likely that causation issues will be highly contentious and involve much expert testimony. *Daubert* hearings and motion *in limine* practice are available to challenge such evidence.

## III. Conclusion

In conclusion, while Rule 16 of the Federal Rules of Civil Procedure provides the Court with authority to issue a *Lone Pine* order pursuant to its broad discretion to administer the civil actions over which it presides, *see Kamuck*, 2012 WL 3864954, at *4, the Court does not find this case warrants the imposition of such an order. The nature of Plaintiffs' claims do not command bypassing the procedures set forth in the federal rules in favor of imposing the extraordinary procedure compelled by a *Lone Pine* order, which would require Plaintiffs to establish causation before Defendants are required to participate in discovery.

The Court being sufficiently advised, **IT IS ORDERED** that:

1. Defendants' Motion to Require Plaintiffs to Produce an Expert Opinion on General Causation Before Discovery Commences (R. 43) is hereby **denied;**

---

order would, in effect, require proof of causation at this early stage of the litigation or a dismissal with prejudice would be entered.

**9.** Defendants' citation to *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir.1988), does not support their argument that a *Lone*

*Pine* order is appropriate at this stage of the litigation, as there is no mention of a *Lone Pine* order in that decision, and the matter was on appeal to review a judgment entered in favor of plaintiffs after a bench trial.

2. Defendants' Motion for Oral Argument (R. 44) is hereby **denied;** and,

3. The parties shall proceed to confer and file a joint planning report in accordance with the Order being entered contemporaneously herewith.

