Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us.  Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 5, 2016

**2016 CO 77**

**No. 16SA38, In Re Rumnock v. Anschutz—Pretrial Procedure—Protective Orders—Trade Secrets; Commercial Information.**

The supreme court discharges its rule to show cause and affirms the trial court's partial denial of defendant American Family Mutual Insurance Company's request for a protective order to restrict plaintiff's use of alleged trade secrets.  The supreme court holds that American Family failed to meet its burden to show that the documents were in fact trade secrets or other confidential commercial information.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 77

**Supreme Court Case No. 16SA38**
*Original Proceeding Pursuant to C.A.R. 21*
District Court, City and County of Denver, Case No. 11CV1387
Honorable A. Bruce Jones, Judge

**In Re**

**Plaintiff:**

Stephen Rumnock,

v.

**Defendants:**

Dennis Anschutz and American Family Mutual Insurance Company, a Wisconsin company licensed to do business in Colorado.

**Rule Discharged**
*en banc*
December 5, 2016

**Attorneys for Plaintiff:**
Taussig & Taussig, P.C.
John G. Taussig, III
Deborah L. Taussig
Scott D. Smith
  *Boulder, Colorado*

**Attorneys for Defendants:**
Campbell, Latiolais & Averbach, LLC
Rebecca Wagner
Kirstin M. Dvorchak
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association**
Keating Wagner Polidori Free, P.C.
Zachary C. Warzel

Melissa A. Hailey
  *Denver, Colorado*

**Attorneys for Amicus Curiae United Policyholders**
Merlin Law Group
William F. Merlin, Jr.
  *Tampa, Florida*

Amy Bach
  *San Francisco, California*

**JUSTICE HOOD** delivered the Opinion of the Court.
**JUSTICE COATS** dissents, and **JUSTICE EID** joins in the dissent.

¶1     This original proceeding involves a discovery dispute between plaintiff Stephen Rumnock and defendant American Family Mutual Insurance Company ("American Family"). After being ordered to produce documents that Rumnock had requested, American Family disclosed some of the documents but almost simultaneously moved for a protective order. The motion sought to preclude Rumnock from using or disclosing the documents—alleged to be trade secrets—outside of this litigation. The trial court granted the motion in part and denied it in part, ordering that the alleged trade secrets not be shared with American Family's competitors but declining to further limit their use.

¶2     American Family petitioned this court under C.A.R. 21 to direct the trial court to enter a protective order limiting the use and disclosure of the documents to the needs of this litigation. American Family asserted the existing protective order was insufficient because it would allow Rumnock to share the alleged trade secrets with non-competitor third parties, who could in turn share them with American Family's competitors. We issued our rule to show cause.

¶3     We now discharge our rule because American Family failed to present to the trial court evidence demonstrating the documents are trade secrets or otherwise confidential commercial information.

## I. Facts and Procedural History

¶4     An uninsured driver crashed into Rumnock's company car, injuring him. Rumnock brought negligence claims against the driver and uninsured/underinsured motorist claims against his insurers, including American Family. American Family

3

opposed Rumnock's efforts to recover under the policy but eventually paid him the policy limits. He then amended his complaint to add bad-faith and abuse-of-process claims against American Family, alleging unreasonable litigation conduct.

¶5 Rumnock requested that American Family produce documents showing, among other things, its procedures, policies, and guidelines for handling uninsured motorist claims. American Family's responses were due September 10, 2015. Rumnock emailed American Family regarding the discovery requests on September 2, 11, 23, and 25, but American Family did not respond or seek an extension or protective order. Rumnock requested a discovery hearing, and on October 8 the court scheduled a hearing for October 29. Rumnock continued to email American Family requesting discovery responses up to the morning of the October 29 hearing.

¶6 When the hearing was held—seven weeks after American Family's discovery responses had been due—American Family still had not responded or requested an extension or protective order. The trial court awarded Rumnock attorney fees, ordered American Family to "respond fully, completely and responsibly to the pending discovery" by the "close of business on November 6th," and ruled, "All objections are waived."

¶7 At 5:06 p.m. on November 6th, American Family disclosed some of the requested documents; two hours later, it filed a motion for a protective order. The motion

4

asserted the internal documents governing claims handling were trade secrets and sought to limit their use and disclosure to the needs of the current litigation.[1]

¶8 The trial court conducted another discovery hearing, at which American Family asserted the claims-handling materials were proprietary and stressed that the requested protective order would only limit use or disclosure beyond the current litigation. Neither party presented evidence at the hearing.

¶9 The court ordered Rumnock not to share the alleged trade secrets with American Family's competitors but refused to order the broader limitations American Family had requested. It reasoned that granting the full protection sought would be inconsistent with its earlier order imposing discovery sanctions against American Family.

## II. Analysis

¶10 The trial court partially denied American Family's request for a protective order because it determined its previous discovery order had limited American Family's ability to seek a protective order.[2] American Family now challenges that determination. We conclude that, even if the court had fully considered the merits of American Family's request, American Family could not have prevailed because it failed to present

---

[1] The motion also sought to protect confidential information about individual employees. Rumnock agreed, and the trial court ordered, that Rumnock would not use or disclose the individual-employee information other than as necessary for this litigation. American Family does not challenge this portion of the order.

[2] We cannot discern from the record whether the trial court determined American Family forfeited the opportunity to seek a protective order by waiver, by sanction, or by some combination of the two. For purposes of our analysis, the distinction is irrelevant. To be clear, we do not address whether a party may be deemed to have waived the right to seek a protective order by failing to timely object to a request for production of documents.

evidence that the documents allegedly in need of protection as trade secrets were, in fact, trade secrets or otherwise confidential commercial information.

¶11    The party opposing discovery bears the burden of proving the need for a protective order. Williams v. Dist. Court, 866 P.2d 908, 912 (Colo. 1993). This generally means showing "good cause" for a protective order. See C.R.C.P. 26(c). But when the protective request concerns allegedly confidential commercial information, the court must first determine whether "the information requested is a trade secret or other confidential information." Direct Sales Tire Co. v. Dist. Court, 686 P.2d 1316, 1319 n.5 (Colo. 1984) (emphasis added); see C.R.C.P. 26(c)(7); cf. Centurion Indus., Inc. v. Warren Steurer & Assocs., 665 F.2d 323, 325 (10th Cir. 1981) ("To resist discovery under [analogous Federal] Rule 26(c)(7), a person must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful.") (footnote omitted); 8A Charles Allen Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2043 (3d ed. 2010) ("It is for the party resisting discovery to establish, in the first instance, that the information sought is within this provision of the rule.").

¶12    Whether a particular piece of information is confidential commercial information is a question of fact to be determined by the trial court. See Gognat v. Ellsworth, 259 P.3d 497, 502 (Colo. 2011) ("[T]he nature of any particular piece of proprietary information . . . may be heavily dependent on scientific or historical facts . . . ."); Saturn Sys., Inc. v. Militare, 252 P.3d 516, 521 (Colo. App. 2011) ("What constitutes a trade secret is a question of fact for the trial court."). Where there is no genuine dispute of

fact, however, we may decide as a matter of law whether the information is a trade secret or otherwise confidential. See, e.g., Gognat, 259 P.3d at 505 (ruling as a matter of law on undisputed facts that proprietary information constituted a single trade secret).

¶13    Here, American Family had the burden to establish the need for the protective order, yet it tendered no evidence from which the court could have determined that the documents actually are trade secrets[3] or otherwise confidential. What few documents American Family affixed to its pleadings regarding the motion—Rumnock's requests for production, American Family's responses to Rumnock's discovery requests, and an email chain—shed no light on whether the documents were confidential. American Family failed to present any affidavits or testimony or submit the alleged trade-secret documents under seal for in-camera review.[4] In fact, the only evidence presented to the

---

[3] The rules of discovery do not define "trade secret," but the term is defined in statutes, see § 7-74-102(4), C.R.S. (2016) ("'Trade secret' means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes."); § 18-4-408(d), C.R.S. (2016) (same), and in the common law, see Julius Hyman & Co. v. Velsicol Corp., 233 P.2d 977, 999 (Colo. 1951) ("Generally it may be said that a trade secret is any plan or process known only to its owner, and those of his employees to whom it is necessary to confide it."). Under any definition of trade secret, American Family's showing falls short.

[4] American Family filed an affidavit as an exhibit to its petition to this court. That affidavit was not filed in the trial court. Consequently, we ignore it. See Panos Inv. Co. v. Dist. Court, 662 P.2d 180, 182 (Colo. 1983) ("[W]e will not consider issues and evidence presented for the first time in original proceedings.").

court bearing on whether the documents were confidential—a deposition excerpt provided by Rumnock—indicated they were not confidential.

¶14 To the extent American Family suggests it had insufficient opportunity to present evidence of trade secrets at the hearing, we disagree. Although the trial court announced before any argument that it was "leaning" towards determining American Family had waived its ability to seek a protective order for trade secrets, it allowed American Family "to make a further argument about the proprietary information . . . to lean [the court in] a different direction." At that point American Family could have sought to introduce evidence or made an offer of proof, see C.R.E. 103(a)(2), but it did neither. Further, American Family had already passed up the opportunity to attach an affidavit to its pleadings leading up to the hearing.

### III. Conclusion

¶15 Because American Family failed to show that the alleged trade secrets were, in fact, trade secrets or otherwise confidential commercial information, we affirm the trial court's partial denial of American Family's request for a protective order. And though American Family's petition was unsuccessful, we conclude it was not frivolous, so we deny Rumnock's request for attorney fees. We discharge our rule to show cause and remand the case to the trial court for further proceedings.

**JUSTICE COATS** dissents, and **JUSTICE EID** joins in the dissent.

JUSTICE COATS, dissenting.

¶16    I respectfully dissent, not only because I find the majority's ruling today to be both misguided and mischievous but also because I disagree with the majority's choice to dodge the more meaningful question actually posed by the order being challenged in this original proceeding.  In the face of a discovery order ostensibly protecting assertedly proprietary information by barring the plaintiff from disclosing it to competing insurers, but simultaneously permitting its disclosure to other plaintiffs' lawyers, who would be unconstrained from doing precisely that, the majority's discharge of our rule effectively allows to stand the very order it holds should never have issued in the first place.  Quite apart from the majority's failure to resolve the question expressly posed by the trial court's rationale for limiting its protective order, and as explicitly argued to this court by the amici United Policyholders and Colorado Trial Lawyers Association with the concurrence of the plaintiff—that is, whether discovery provided by the civil rules is intended solely for the benefit of opposing parties or rather must remain subject to dissemination to others outside the litigation also seeking information about the practices of the disclosing party—I believe the majority's decision to deprive the insurer of protection against dissemination beyond this litigation, while simultaneously ignoring the trial court's actual rationale for doing so, may not turn out to be as deft or cost-free as the majority seems to think.  Assuming that it is viewed as more than simply a quick way of disposing of the instant petition, it appears more likely to me that the majority's rationale for discharging our rule today must have the odd effect of imposing on parties asserting a claim of proprietary

1

information an obligation to ensure that they have proven as much to the satisfaction of a potential reviewing court, notwithstanding the acquiescence of both trial court and opposing party to the issuance of a protective order.

¶17    The order specifically challenged in the petition for relief pursuant to C.A.R. 21 was an order of the district court granting the defendant–insurer's motion for a protective order concerning proprietary corporate information ordered disclosed to the plaintiff, but only to the extent of barring the plaintiff from further disclosing that proprietary corporate information to the insurer's competitors.  The court's order simultaneously denied the defendant's request that the use of its proprietary corporate information be limited to the current litigation, which would have effectively barred the plaintiff from disseminating it to others who would not be similarly constrained from disclosing it to the defendant's competitors.  Although the district court initially denied any protective order at all, on the sole ground that entitlement to such an order was waived as a sanction for earlier discovery violations, upon hearing the insurer's challenge to the appropriateness of this blanket waiver sanction, it relented and partially granted the insurer's motion for protection.  In doing so, however, the court made clear that its continued unwillingness to further limit the scope of its discovery order resulted not from any failure of the insurer to establish the proprietary nature of its documents, which would of course have been contradictory of its grant of a partial protective order, but instead reflected its accession to the plaintiff's assertion of an entitlement to share the insurer's proprietary corporate information with "fellow Plaintiffs lawyers" or to use it in possible future litigation of his own.

2

¶18    The district court did not more specifically determine which of the documents actually contained proprietary corporate information, and given both the nature of its ruling and the fact that the multitudinous documents at issue had already been ordered turned over to the plaintiff as a sanction, little purpose would have been served by doing so. The fact that the disclosed documents, as a group, contained proprietary information was clearly accepted by both the court and the parties as the premise for the ensuing debate over the court's discretion to limit their disclosure directly to competitors, on the one hand, while permitting their disclosure to plaintiffs' lawyers in unconnected litigation, on the other. Whether or not the district court would have even entertained additional evidence on the proprietary nature of this corporate information, there was simply no need for it. By that stage of the discovery process, the district court had made eminently clear that the only issues with which it was concerned were the scope of its "waiver" sanction and, contained within that question, whether disclosure of the insurer's proprietary information should be limited to use in the current litigation.

¶19    The propriety of an order acknowledging good cause for protecting the insurer's commercial information from being revealed to its competitors and, at one and the same time, permitting the dissemination of that information to the plaintiffs' bar generally, for use without limitation in other litigation, was ever the only reason for our interference at the discovery stage of the current litigation. Unlike the majority, I would make clear that providing for the benefit of other litigants, in unconnected litigation, is not a proper basis for ordering the disclosure of, or denying a protective order for,

3

information otherwise meriting protection according to C.R.C.P. 26(c); nor is it a proper sanction for discovery violations, as permitted by C.R.C.P. 37. Whether or not the "waiver" of all objections, as ordered by the district court in this case, might under some circumstance be considered a sanction within the contemplation of Rule 37 for recalcitrance in complying with discovery rules, an order permitting the dissemination of a party's proprietary corporate information for use in other, unconnected litigation, either to punish that party or benefit potential future litigants, clearly implicates matters of both policy and process extending far beyond the contemplation of the Rule.

¶20 I therefore take this opportunity to briefly, but emphatically, express my disapproval not only of the result reached by the majority today but also of the grounds upon which it rests its current disposition. Were I to agree with the majority that a procedural default or inadequacy of proof by the defendant actually made it untenable for us to reach the issue upon which we granted the petition (which I do not), I believe dismissal of the petition as improvidently granted would be the proper course of action. In any event, whatever might be considered an appropriate technique for lower courts, I consider it unworthy of a high court to dispose of matters we have ourselves found sufficiently significant to merit the exercise of our original jurisdiction, on the basis of such a mechanical, "gotcha" rationale.

¶21 I therefore respectfully dissent.

I am authorized to state that JUSTICE EID joins in this dissent.

4