DIRECT SALES TIRE CO., A Colorado Corporation, Petitioner,

v.

The DISTRICT COURT In and For the COUNTY OF JEFFERSON, State of Colorado; The Honorable Ronald J. Hardesty, One of the Judges thereof, and Royal Farm Dairy, Inc., a Colorado Corporation, Respondents.

No. 84SA2.

Supreme Court of Colorado, En Banc.

Aug. 20, 1984.

Evan S. Lipstein, Nancy L. Cohen, Plaut, Lipstein, Beckman, P.C., Denver, for petitioner.

Burns & Figa, P.C., Hugh A. Burns, Phillip S. Figa, Denver, for respondents.

NEIGHBORS, Justice.

The petitioner, Direct Sales Tire Co., filed this original proceeding pursuant to C.A.R. 21, seeking a writ directing the respondent district court to withdraw its order granting, in part, the motion to compel discovery filed by Royal Farm Dairy, Inc., and to require that Royal Farm present prima facie evidence of the unfair competition allegations made in its complaint before permitting it to pursue discovery. We issued a rule to show cause which we now discharge.

### I.

The underlying action pending in the respondent court involves alleged sales of unbranded gasoline by Direct Sales at a retail price below cost in violation of the Colorado Unfair Practices Act, sections 6-2-101 to -117, 2 C.R.S. (1973 & 1983 Supp.). Royal Farm, the plaintiff, and Direct Sales, the defendant, sell unbranded gasoline at several retail locations, some of which are in direct competition with each other. Royal Farm filed its complaint against Direct Sales seeking damages and injunctive relief arising from Direct Sales' alleged violations of section 6-2-105, 2 C.R.S. (1973).[1] Royal Farm claims it sustained damages because Direct Sales offered, advertised, and sold gasoline at prices below cost. Royal Farm sought to obtain evidence relating to Direct Sales' retail prices and cost of doing business by use of a request for

---

1. Section 6-2-105, 2 C.R.S. (1973), states:
   Unlawful to sell below cost. (1) It is unlawful for any person, partnership, firm, corporation, joint stock company, or other association engaged in business within this state to sell, offer for sale, or advertise for sale any article or product or service or output of a service trade for less than the cost thereof to such vendor, or give, offer to give, or advertise the intent to give away any article or product or service or output of a service trade for the purpose of injuring competitors and destroying competition. A vendor who violates this section is guilty of a misdemeanor and, upon conviction thereof, shall be subject to the penalties provided in section 6-2-116.
   (2) "Cost", as applied to production, includes the cost of raw materials, labor, and all overhead expenses of the producer; and as applied to distribution "cost" means the invoice or replacement cost, whichever is lower, of the article or product to the distributor and vendor plus the cost of doing business by said distributor and vendor.
   (3) "Cost of doing business" or "overhead expense" means all costs of doing business incurred in the conduct of such business and includes without limitation the following items of expense: Labor, including salaries of executives and officers, rent, interest on borrowed capital, depreciation, selling cost, maintenance of equipment, delivery costs, credit losses, all types of licenses, taxes, insurance, and advertising.

production of documents which was served on Direct Sales with the complaint.[2]

Direct Sales declined to produce the information and filed a motion for a protective order to prohibit Royal Farm from discovering its confidential financial and management records on the grounds that the information sought by Royal Farm was privileged and that the broad request for production of financial information was an invasion of its right of privacy and constitutes harassment. Direct Sales also asked the respondent court to require Royal Farm to establish a prima facie case of unfair competition before allowing it to review the requested documents. Direct Sales submitted an affidavit of its president, Samuel E. Forbes, in support of its argument that Direct Sales would be harmed by disclosure of the confidential information sought by Royal Farm.[3] Royal Farm then filed a motion to compel discovery of the documents enumerated in its request for production on the basis that (1) the requested information was not privileged; (2) this court rejected the rule that the party seeking financial information from the opponent in discovery proceedings must first establish a prima facie case; and (3) Direct Sales alone has access to the facts concerning its cost of doing business which is directly relevant to the basic issue in the suit, i.e., whether Direct Sales sold gasoline below its cost.

The respondent court ruled that Royal Farm's request for production of documents was "overbroad and oppressive as it applie[d] to business by the defendant in locations other than those set forth in paragraph 1 of plaintiff's request for inspection of documents [Direct Sales' outlets located at West Ralston Road and Miller in Jefferson County, and at 2235 South Syracuse Way in Denver]." Accordingly, the court granted Royal Farm's motion to compel, but limited discovery to documents directly related to the specific Direct Sales outlets listed above.

## II.

We first note that issues relating to pretrial discovery are interlocutory in nature and are ordinarily reviewable only on appeal, not in original proceedings. *Bond v. District Court*, 682 P.2d 33 (Colo. 1984); *LeGrange v. District Court*, 657 P.2d 454 (Colo.1983). However, we have made exceptions to this general rule when a pretrial discovery order may cause unwarranted damage to a litigant that cannot be cured on appeal. *Bond*, 682 P.2d at 36. In this case, if the petitioner is wrongly compelled to produce the requested financial information for use by its competitor in this litigation, the damage will be done regardless of any appeal. Therefore, the exercise of our original jurisdiction is justified.

## III.

Two provisions of C.R.C.P. 26 are applicable to this case. C.R.C.P. 26(c) governs

2. Specifically, Royal Farm requested: (1) All invoices of gasoline purchased by Direct Sales since January 1, 1981, and resold at Direct Sales' stores at West Ralston Road and Miller in Jefferson County and at 2235 So. Syracuse Way in Denver, (2) all invoices of ethanol purchased and blended with gasoline for resale at the same locations, (3) all documents showing Direct Sales' cost of doing business, (4) all Colorado and United States gasoline tax returns for the same period, (5) all financial statements pertaining to above locations, pertaining to Direct Sales' business in Colorado and pertaining to Direct Sales' entire business, (6) all records of the retail price of regular and unleaded gasolines, (7) all documents concerning the retail gasoline prices charged by competitors of the same locations, (8) all documents concerning Direct Sales' retail pricing policies or procedures for the period since January 1, 1981, (9)

all written communications between the defendant and the above locations concerning retail prices of regular or unleaded gasoline, (10) all U.S. and Colorado income tax returns of Direct Sales for any period ending on or after December 31, 1980, (11) minutes of all meetings of the board of directors of Direct Sales or any committee thereof for the past five years, and (12) reports to shareholders, proxy statements, and prospectuses of Direct Sales, its affiliates, and subsidiaries for the past five years.

3. Mr. Forbes' affidavit focuses on the highly competitive nature of the retail gasoline business. He states that because of the small profit margin, disclosure of information relating to management systems, identity of suppliers, costs of supplies and computer software would damage the future profitability of Direct Sales.

protective orders and provides that the court "may make any order which justice requires to protect a party ... from annoyance, ... oppression, or undue burden...." C.R.C.P. 26(c)(7) is specifically directed to trade secrets and confidential commercial information. That rule provides that a protective order may prohibit the disclosure of such information or that it be disclosed in a prescribed way.

### A.

Direct Sales' position is that corporations have a right of privacy,[4] that its confidential commercial information is protected by that right, and that the respondent court's discovery order violates its right of privacy because an adequate protective order was not included in the ruling. It is unnecessary for us to resolve the corporate right of privacy issue in the context of this case. Therefore, we save that issue for another day.

A party to civil litigation enjoys no absolute right to withhold disclosure of the nature or existence of trade secrets from an opposing party. *Curtis, Inc. v. District Court*, 186 Colo. 226, 526 P.2d 1335 (1974). Rather, under C.R.C.P. 26(c)(7), a trial court is authorized to issue a protective order upon a showing of good cause that a trade secret or other confidential commercial information will be misused or disclosed to the public if such an order is not entered.[5] *Id.* The test of whether good cause exists in a particular case is determined by balancing the need to limit disclosure of the confidential information against the need of the opposing party to have access to the information. *Id.* Thus, our inquiry here is limited to whether the respondent court abused its discretion

when it refused to require Royal Farm to make a prima facie case before engaging in discovery proceedings and entered its order granting Royal Farm's motion to compel discovery, but limited the discoverable documents to those which directly relate to two specific outlets of Direct Sales.

Direct Sales contends that Royal Farm should not be given access to information about its financial condition, pricing policies, suppliers, management systems, and other business secrets upon the mere filing of an unfair competition complaint. While acknowledging that our decision in *Curtis*, 186 Colo. 226, 526 P.2d 1335, rejected the prima facie case argument, Direct Sales suggests that the court's opinion in *Leidholt v. District Court*, 619 P.2d 768 (Colo. 1980), implicitly modifies our holding in *Curtis*. We do not agree.

In *Curtis*, the parties to the district court suit were competitors. The plaintiff filed a motion for protective orders alleging that trade secrets in its possession had been sought, or would be sought by the defendants in connection with discovery proceedings. The plaintiff requested that the trial court impose certain security measures to prevent public disclosure of the trade secrets contained in the documents. The trial court denied relief and ordered pretrial discovery to proceed without the benefit of any protective orders. The plaintiff then filed an original proceeding in this court. We held that the trial court abused its discretion by failing to enter a protective order because the plaintiff had shown good cause why all but the requested limitation on copying the documents should be granted. We stated:

court should determine whether the information requested is a trade secret or other confidential information. Second, the court should ascertain whether the disclosure of such information would cause cognizable harm sufficient to warrant a protective order. Finally, the court should consider whether the party seeking the protective order has shown "good cause" for invoking the court's protection. *See Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.*, 529 F.Supp. 866 (E.D.Pa.1981).

---

**4.** Direct Sales bases this argument on decisions which hold that corporations, as well as individuals, have a right of privacy. *See, e.g., Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225 (9th Cir.1975); *Mountain States Telephone & Telegraph Co. v. Department of Public Service Regulation*, 634 P.2d 181 (Mont.1981).

**5.** When analyzing a request for protective orders concerning allegedly confidential commercial information, the court should be guided by the following three-prong analysis. First, the

Without these limitations, we perceive of no method which would insure that the petitioner's trade secrets remain as secret as the circumstances allow. Still, the defendant will receive the information necessary for a full defense on the merits.

*Curtis*, 186 Colo. at 213, 526 P.2d at 1337–1338.

A second issue arose in *Curtis*. The trial court denied the plaintiff's discovery motion relating to its request· under C.R.C.P. 34 for inspection and copying of logs and record keeping systems. In reversing the trial court's ruling, we expressly rejected the defendant's argument that the plaintiff was required to make out a prima facie case prior to discovery and held:

> Our reading of the record indicates that the court desired that petitioner make out a prima facie case prior to granting discovery. This requirement is not imposed by C.R.C.P. 34 and contradicts the broader policy of the rules that all conflicts should be resolved in favor of discovery. In short, there is no basis for the imposition of such a burden and judicial discretion was therefore abused. Any burden that exists should be placed on those opposing discovery.

*Id.* at 233, 526 P.2d at 1339.

In *Liedholt,* we stated:

> Generally, the burden is cast upon the party who seeks a protective order to show annoyance, embarrassment or oppression. However, we hold that the nature of discovery of financial information of a litigant requires a broader basis for protection. Thus, when punitive damages are in issue and information is sought by the plaintiff relating to the defendant's financial condition, justice requires no less than the imposition on the

plaintiff of the burden of establishing a *prima facie* right to punitive damages. 619 P.2d at 771. Petitioner argues that this holding casts doubt upon the continued viability of our decision in *Curtis.* The petitioner's reliance upon this language is misplaced. *Leidholt* stands for the proposition that discovery of financial information pertinent to punitive damages must be deferred until the claimant establishes a prima facie case of liability on the underlying claim and the right to recover such damages. In this case, Royal Farm alleges that discovery of the requested documents is essential to its obtaining complete information concerning the only issue in the case, the alleged violation of the Colorado sales below cost statute. Our decision in *Leidholt* provides no basis for foreclosing Royal Farm from using all discovery procedures until it establishes a prima facie case.

In addition, the specific provisions of the Colorado Unfair Practices Act under which this case was filed contain no requirement that a plaintiff make a prima facie showing to support the allegations of the complaint before obtaining discovery. The statutory scheme contemplates that to prove a claim the plaintiff must acquire information pertaining to the defendant's cost of doing business, including overhead expenses.[6] The Act requires that an aggrieved party make a prima facie showing that the conduct of a person or organization is in violation of the Act only when he is requesting the attorney general to seek injunctive relief.[7] If the legislature had intended that a prima facie case requirement be included in the provisions authorizing the private cause of action permitted by section 6–2–111(1), 2 C.R.S. (1973), it would have done so.

---

6. *See* § 6–2–105(2) and (3), 2 C.R.S. (1973).

7. *See* § 6–2–111(3), 2 C.R.S. (1973), which states:

> If any person, firm, private corporation, municipal corporation, public corporation, or trade association, in writing and under oath, submits to the attorney general a statement setting forth facts sufficient to constitute a

> prima facie case of violation of any of the provisions of sections 6–2–103 to 6–2–108 or any other provisions of this article, it shall be mandatory upon the attorney general to seek injunctive relief or restraining orders to enjoin the continuance of such violation by any person, firm, private corporation, or other organization so charged....

Finally, the adoption of a prima facie case requirement would be contrary to the basic principles governing discovery to which the court has consistently adhered: (1) Discovery rules should be construed liberally to effectuate the full extent of their truth-seeking purpose. (2) In close cases, the balance must be struck in favor of allowing discovery. (3) The party opposing discovery bears the burden of establishing good cause exists for the entry of a protective order. *Hawkins v. District Court,* 638 P.2d 1372, 1375 (Colo.1982); *Cameron v. District Court,* 193 Colo. 286, 290, 565 P.2d 925, 928–29 (1977).

B.

The petitioner has not convinced us that the respondent court abused its discretion in light of its ruling that discovery be limited to those documents relating to Direct Sales' business at the two specified retail outlets. It is customary, in cases involving the disclosure of confidential commercial information, for the court to enter orders protecting the confidentiality of this information by such safeguards as *in camera* inspection of documents and the limitation of access to and the permissible use of the documents by the opponents. However, relief of this nature has not been requested by Direct Sales. Rather, Direct Sales has continually asserted that the imposition of these traditional restrictions would be totally inadequate to protect its interest in this case. Direct Sales seeks issuance of a protective order requiring Royal Farm to produce evidence sufficient to establish a prima facie case that it violated the statute, exclusive of all other remedies. Direct Sales is not entitled to such relief. Therefore, the rule is discharged.

LOHR, J., does not participate.