2013 COA 106

William G. STRUDLEY and Beth E. Strudley, individually and as the parents and natural guardians of William Strudley and Charles Strudley, both minors, Plaintiffs–Appellants,

v.

ANTERO RESOURCES CORPORATION, Antero Resources Piceance Corporation, Calfrac Well Services Corporation, and Frontier Drilling, LLC, Defendants–Appellees.

Court of Appeals No. 12CA1251

Colorado Court of Appeals,
Div. I.

Announced July 3, 2013

Thomas | Greenshaft, LLP, Peter W. Thomas, Aspen, Colorado; Frascona, Joiner, Goodman and Greenstein, P.C., Corey T. Zurbuch, Boulder, Colorado; Napoli Bern Ripka Shkolnik & Assoc., LLP, Marc Jay Bern, Tate J. Kunkle, New York, New York, for Plaintiffs–Appellants

Hogan Lovells U.S. LLP, Daniel J. Dunn, Andrew C. Lillie, David A. DeMarco, Denver, Colorado; Vinson & Elkins LLP, Robert M. Schick, James D. Thompson, III, Houston, Texas, for Defendants–Appellees Antero Resources Corporation and Antero Resources Piceance Corporation

Davis Graham & Stubbs LLP, Gail L. Wurtzler, Adam S. Cohen, Shannon Wells Stevenson, Denver, Colorado, for Defendant–Appellee Calfrac Well Services Corporation

Burns Figa & Will, P.C., Matthew B. Dillman, Sarah M. Shechter, Greenwood Village, Colorado, for Defendant–Appellee Frontier Drilling LLC

Opinion by JUDGE TAUBMAN

¶ 1 In this toxic-tort case, plaintiffs, William G. Strudley and Beth E. Strudley, individually and as the parents and guardians of William Strudley and Charles Strudley (collectively "the Strudleys"), appeal the trial court's orders requiring them to present prima facie evidence to support their claims prior to the initiation of full discovery, and dismissing their claims with prejudice for not meeting this burden.

¶ 2 This case presents an issue of first impression in Colorado regarding whether a trial court in a toxic tort case can enter an order requiring plaintiffs to present prima facie evidence supporting their claims after initial disclosures, but before other discovery commences, or risk having their case dismissed. We conclude that such orders are prohibited under Colorado law. Accordingly, we reverse the trial court's orders and remand the case to the trial court.

## I. Background

¶ 3 The Strudleys sued defendants, Antero Resources Corporation, Antero Resources Piceance Corporation, Calfrac Well Services Corp., and Frontier Drilling LLC (collectively "the companies"), claiming negligence, negligence per se, nuisance, strict liability, and trespass, related to physical and property injuries allegedly caused by the companies' natural gas drilling operations within close proximity to their home. The Strudleys also requested the establishment of a medical monitoring trust.

¶ 4 The Strudleys' complaint alleged that the companies committed tortious acts when pollutants from their drilling activities at three well sites contaminated the air, water, and ground near and around their home, and that those acts caused property damage and "personal and physical injuries, known and unknown." The complaint enumerated certain chemicals and contaminants that allegedly polluted the Strudleys' property, including hydrogen sulfide, hexane, n-heptane, toluene, propane, isobutene, n-butane, isopentane, n-pentane, and other pollutants. However, it

did not identify which of these pollutants caused the alleged injuries.

¶ 5 The Strudleys moved out of their house in January 2011. According to the complaint, they "were forced to flee and abandon their home because of the toxic and hazardous contamination caused by [the companies]." An affidavit submitted by William G. Strudley in opposition to the companies' summary judgment motion[1] stated that while they were still living in their home, the Strudleys suffered "a myriad of symptoms from the air contamination, including but not limited to burning eyes and throat, skin rashes, constant headaches, nausea, terrible bouts of non-stop coughing and continual bloody noses." The affidavit further stated that after the Strudleys moved to a different residence, these symptoms subsided. Finally, the affidavit stated that the Strudleys' well water was visibly polluted and emitted a bad odor. A study conducted on the well water, one year after the Strudleys moved away, indicated pollutants were present in the well water above recommended levels.

¶ 6 The parties filed initial disclosures pursuant to C.R.C.P. 26. However, shortly thereafter, the companies moved for a modified case management order pursuant to C.R.C.P. 16(c). Specifically, the companies requested the trial court to enter an order similar to that in *Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J.Super. Ct. Law Div. Nov. 18, 1986) (unpublished opinion), which required the Strudleys to present prima facie evidence to support their claims before full discovery could commence.[2] In connection with their motion, the companies submitted evidence that they alleged contradicted the Strudleys' claims, including a report conducted by the Colorado Oil and Gas Conservation Commission (COGCC) that concluded that there were "no indications of any oil & gas related impacts to [the Strudleys'] well," based on a water sample taken on November 30, 2010. The companies further asserted that a *Lone Pine* order was necessary because the case

was complex and would "entail significant discovery at substantial cost to the parties."

¶ 7 Over the Strudleys' objection, the trial court granted the companies' request and issued a modified case management order requiring the Strudleys to provide, within 105 days:

i. Expert opinion(s) provided by way of sworn affidavit(s), with supporting data and facts in the form required by [C.R.C.P.] 26(a)(2)(B)(I), that establish for each Plaintiff (a) the identity of each hazardous substance from Defendants' activities to which he or she was exposed and which the Plaintiff claims caused him or her injury; (b) whether any and each of these substances can cause the type(s) of disease or illness that Plaintiffs claim (general causation); (c) the dose or other quantitative measurement of the concentration, timing and duration of his/her exposure to each substance; (d) if other than the Plaintiffs' residence, the precise location of any exposure; (e) an identification, by way of reference to a medically recognized diagnosis, of the specific disease or illness from which each Plaintiff allegedly suffers or for which medical monitoring is purportedly necessary; and (f) a conclusion that such illness was in fact caused by such exposure (specific causation).

ii. Each and every study, report and analysis that contains any finding of contamination on Plaintiffs' property or at the point of each Plaintiff's claimed exposure.

iii. A list of the name and last known address and phone number of each health care provider who provided each Plaintiff with health services along with a release authorizing the health care providers to provide Plaintiffs' and Defendants' counsel with all of each Plaintiff's medical records, in

---

1. As discussed below, the companies moved to dismiss the Strudleys' claims or in the alternative for summary judgment. The trial court did not rule on the summary judgment portion of the motion.

2. Such orders have, in other jurisdictions, become known as *"Lone Pine* orders," a term we use throughout this opinion.

the form of Exhibit A hereto, within twenty-one days of the date of this Court's entry of this Modified Case Management Order.

iv. Identification and quantification of contamination of the Plaintiffs' real property attributable to Defendants' operations.

¶ 8 In response to the order, the Strudleys provided the court with certain information including a letter from John G. Huntington, Ph.D., which concluded that a test of the well water on the Strudleys' property conducted on December 7, 2011 demonstrated chemical levels above recommended guidelines. The letter concluded that "these results could be consistent with contamination from gas well chemicals or production waters, although that conclusion cannot be reached unequivocally from the chemical data alone." The Strudleys also submitted an affidavit by Thomas L. Kurt, MD, MPH. Dr. Kurt stated that he never physically examined the Strudleys, but had spoken with William G. and Beth E. Strudley on the phone regarding their symptoms and had observed color photographs of their son's skin rash and bloody nose. Dr. Kurt also examined test results regarding the water quality of the Strudleys' well. Based on this information, Dr. Kurt concluded that

sufficient environmental exposure and health information exists to merit further substantive discovery to include (1) modeling of ambient plumes of fugitive emissions from the three wellhead areas ... (2) ... further information of compliance with public environmental safety ... (3) a search for microseismic findings for vertical fault fracturing among the three wells described in the complaint ... (4) a review of company-performed ambient air sampling during the hydraulic fracking process and afterward (5) determining what quality testing inspections were performed for cementing leaks allowing vertical pressure driven migration (6) evaluation of the skin rashes in the color photographs with a dermatologic history-taking ... and (7) clinical testing by a neuropsychologist for neuropsychological environmental injury.

¶ 9 The Strudleys provided no expert opinion that concluded that the harm to their property or their physical injuries were directly caused by the companies' conduct. Nor did the Strudleys present expert evidence documenting all of their physical injuries through medical examination.

¶ 10 Based on the Strudleys' submissions, the companies moved to dismiss the Strudleys' claims pursuant to C.R.C.P. 37, or, in the alternative, for summary judgment. The Strudleys responded, asserting that their evidentiary submissions complied with the trial court's *Lone Pine* order, and therefore, dismissal under C.R.C.P. 37 was not appropriate. They further asserted that issues of material fact existed that precluded a grant of summary judgment.

¶ 11 The trial court dismissed all of the Strudleys' claims with prejudice, finding that the Strudleys failed to prove a prima facie case, specifically in relation to causation. The court did not cite any rule of civil procedure under which it was dismissing the claims. Nor did the court address the companies' summary judgment motion.

## II. Trial Court's Authority to Enter a *Lone Pine* Order

¶ 12 The Strudleys assert that the trial court erred by entering the *Lone Pine* order because such orders are not permitted as a matter of Colorado law. We agree.

### A. Standard of Review

¶ 13 Generally, trial courts are afforded significant discretion over pretrial discovery matters. *Wenz v. Nat'l Westminster Bank, PLC*, 91 P.3d 467, 469 (Colo.App.2004). However, we review de novo a trial court's interpretation of the rules of civil procedure, because it presents a question of law. *City & Cnty. of Broomfield v. Farmers Reservoir & Irrigation Co.*, 239 P.3d 1270, 1275 (Colo. 2010). Similarly, we review de novo whether the trial court applied the correct legal standard. *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 897–98 (Colo.2008).

### B. *Lone Pine* Orders

¶ 14 *Lone Pine* orders arise from a 1986 decision of the New Jersey Superior Court, in a case in which homeowners sued 464 operators of a nearby landfill for personal injuries and property damage resulting from the landfill's operation. *Lone Pine*, 1986 WL 637507. At a pretrial conference, the trial court concluded that the plaintiffs had not presented a prima facie claim in their complaint. The court also noted that a U.S. Environmental Protection Agency report contradicted the plaintiffs' claims. Thus, the court entered a case management order requiring the plaintiffs to provide facts to support their claims through expert reports, or risk having their case dismissed. When the plaintiffs failed to meet this burden, the trial court dismissed their claims with prejudice. *Id.* Since the decision in *Lone Pine*, courts in other jurisdictions have used similar orders "to handle the complex issues and potential burdens on defendants and the court [in complex cases]." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir.2000).

### C. Relevant Colorado Law

¶ 15 Neither party cites to Colorado law allowing the issuance of a *Lone Pine* order, nor are we aware of any. However, the Colorado Supreme Court has held that a trial court abuses its discretion by requiring a showing of a prima facie case before allowing discovery of documents containing trade secrets. *Curtis, Inc. v. Dist. Court*, 186 Colo. 226, 233, 526 P.2d 1335, 1339 (1974). In *Curtis*, the court held that such a "requirement is not imposed by C.R.C.P. 34 and contradicts the broader policy of the rules that all conflicts should be resolved in favor of discovery." *Id.* The court further held that where the scope of discovery is disputed, "[a]ny burden that exists should be placed on those opposing discovery." *Id.*

¶ 16 Similarly, in *Direct Sales Tire Co. v. Dist. Court*, 686 P.2d 1316, 1319 (Colo.1984), the defendant asserted that the court should require the plaintiff to make a showing of a prima facie case before the court grants discovery in an unfair competition claim. The supreme court, however, held that nothing in the Colorado Unfair Practices Act required a prima facie showing. *Id.* at 1320. The court added:

> the adoption of a prima facie case requirement would [also] be contrary to the basic principles governing discovery to which the court has consistently adhered: (1) Discovery rules should be construed liberally to effectuate the full extent of their truth-seeking purpose. (2) In close cases, the balance must be struck in favor of allowing discovery. (3) The party opposing discovery bears the burden of establishing good cause exists for the entry of a protective order.

*Id.* at 1321.

¶ 17 The court in *Direct Sales Tire Co.* distinguished *Leidholt v. District Court*, 619 P.2d 768, 771 (Colo.1980), in which it held that "when punitive damages are in issue and information is sought by the plaintiff relating to the defendant's financial condition, justice requires no less than the imposition on the plaintiff of the burden of establishing a prima facie right to punitive damages." The *Direct Sales Tire Co.* court reasoned that in *Leidholt* the limitation on discovery related only to punitive damages, rather than the underlying tort claim, whereas in *Direct Sales Tire Co.* "discovery of the requested documents [was] essential to ... obtaining complete information concerning the only issue in the case." 686 P.2d at 1320.

¶ 18 We read these cases to stand for the proposition that a trial court may not require a showing of a prima case before allowing discovery on matters central to a plaintiff's claims—as opposed to punitive damages or other secondary matters. *See also United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) ("Modern instruments of discovery serve a useful purpose.... They together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."). Thus, although in some extraordinary circumstances a showing of a prima facie case may be required prior to discovery, such a requirement is generally disfavored.

### D. *Lone Pine* Orders in Other Jurisdictions

¶ 19 In other jurisdictions, "*Lone Pine* orders appear to be utilized most often in cases involving complicated legal and factual issues in complex mass tort and toxic tort litigation involving multiple parties, where the discovery process would be particularly burdensome, and where the plaintiff's ability to sustain their burden of proof was found to be questionable." *Roth v. Cabot Oil & Gas Corp.*, 287 F.R.D. 293, 297 (M.D.Pa.2012) (collecting cases); *see also In re Fosamax Prods. Liab. Litig.*, 2012 WL 5877418 (S.D.N.Y. Nov. 20, 2012) (slip opinion and order) (granting a motion for a *Lone Pine* order in multidistrict litigation involving approximately one thousand cases and eleven million pages of documents); *cf. Kamuck v. Shell Energy Holdings GP, LLC*, 2012 WL 3864954 (M.D.Pa. Sept. 5, 2012) (unpublished opinion and order) (denying motion for *Lone Pine* order in toxic tort case involving one plaintiff and three defendants); *Ramirez v. E.I. Dupont De Nemours & Co.*, 2010 WL 144866 (M.D.Fla. Jan. 8, 2010) (unpublished order) (a *Lone Pine* order is "patently unwarranted" in a case involving one plaintiff and one defendant). Nevertheless, a *Lone Pine* order was issued in at least one case involving only a few parties where the issues presented were complex. *See Pinares v. United Technologies Corp.*, 2011 WL 240512 (S.D.Fla. Jan. 19, 2011) (unpublished order) (granting *Lone Pine* order in a case involving two plaintiffs where the plaintiffs' discovery requests included sixty years of records related to the defendant's business and where the responses would be expensive and time consuming).

¶ 20 As stated above, federal courts that have issued *Lone Pine* orders have consistently relied on Fed.R.Civ.P. 16 as authority. *See, e.g., In re Vioxx Prods. Liab. Litig.*, 388 Fed.Appx. 391, 397 (5th Cir.2010); *McMunn v. Babcock & Wilcox Generation Grp., Inc.*, 896 F.Supp.2d 347, 351 (W.D.Pa.2012); *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. 249, 255 (S.D.W.Va.2010); *McManaway v. KBR, Inc.*, 265 F.R.D. 384, 385 (S.D.Ind.2009). These courts have held that Rule 16 provides trial courts "broad discretion to administer the civil actions over which they preside," particularly in complex litigation. *See Roth*, 287 F.R.D. at 298. Specifically, courts rely on Fed.R.Civ.P. 16(c)(2), which provides, in relevant part:

At any pretrial conference, the court may consider and take appropriate action on the following matters:

(A) formulating and simplifying the issues, and eliminating frivolous claims or defenses;

. . .

(L) adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems;

. . . and(P) facilitating in other ways the just, speedy, and inexpensive disposition of the action.

¶ 21 Although *Lone Pine* "orders have been widely used in mass torts to isolate spurious claims," David F. Herr, *Manual for Complex Litigation* § 11.3, author's comments (4th ed. 2013), courts have expressed concern about their "untethered use," *Roth*, 287 F.R.D. at 298 (quoting *Digitek*, 264 F.R.D. at 257). For example, the Ohio Court of Appeals, in *Simeone v. Girard City Board of Education*, 171 Ohio App.3d 633, 872 N.E.2d 344, 350 (2007), stated:

The *Lone Pine* order has faced harsh criticism because it gives courts the means to ignore existing procedural rules and safeguards. When the *Lone Pine* order cuts off or severely limits the litigant's right to discovery, the order closely resembles summary judgment, albeit without the safeguards that the Civil Rules of Procedure supply. Furthermore, many *Lone Pine* orders are inconsistently applied, which further confuses their purpose.

Similarly, in *McManaway*, the magistrate recognized that while a "*Lone Pine* order can in some cases be a useful case management tool ... it should not be considered a substitute for or another species of a motion for summary judgment," and thus, "[a] *Lone Pine* order should issue only in an exceptional case." 265 F.R.D. at 388.

¶ 22 Accordingly, some courts have refused to enter *Lone Pine* orders where existing statutes, rules, and procedures provide sufficient protection against frivolous or unsupported claims and burdensome discovery. *See, e.g., Roth*, 287 F.R.D. at 299–300 ("[W]e find it preferable 'to yield to the consistency and safeguards of the mandate rules [of civil procedure],' as well as the Court's own flexibility and discretion to address discovery disputes as they arise, as opposed to entering the rigid and exacting *Lone Pine* order that Defendants have proposed." (citation omitted) (quoting *Digitek*, 264 F.R.D. at 259)); *Kamuck*, 2012 WL 3864954, at *6 (same).

¶ 23 In *Digitek*, defendants in multidistrict pharmaceutical litigation moved for entry of a *Lone Pine* order requiring plaintiffs to provide expert affidavits showing that they had suffered injuries from taking defendants' medication. 264 F.R.D. at 253. However, the magistrate denied the motion after weighing the complexity of the case against the existing procedures available to the court under the Federal Rules of Civil Procedure. *Id.* at 259. The magistrate noted that "[r]esorting to crafting and applying a *Lone Pine* order should only occur where existing procedural devices explicitly at the disposal of the parties by statute and federal rule have been exhausted or where they cannot accommodate the unique issues of this litigation." *Id.* Thus, while recognizing the complexity of the case, the magistrate held that a *Lone Pine* order was not necessary because existing procedural rules provided sufficient protection against frivolous claims and unreasonably burdensome discovery: "[g]iven a choice between a '*Lone Pine* order' created under the court's inherent case management authority and available procedural devices such as summary judgment, motions to dismiss, motions for sanctions and similar rules, I believe it more prudent to yield to the consistency and safeguards of the mandated rules." *Id.*

¶ 24 Finally, courts considering whether to issue a *Lone Pine* order have held that in doing so they "should strive to strike a balance between efficiency and equity." *In re Vioxx Prods. Liab. Litig.*, 557 F.Supp.2d 741, 744 (E.D.La.2008); *see also Fosamax*, 2012

WL 5877418, at *3; *Roth*, 287 F.R.D. at 298; *Digitek*, 264 F.R.D. at 256; *McManaway*, 265 F.R.D. at 385. This is because "*Lone Pine* orders may not be appropriate in every case and, even when appropriate, they may not be suitable at every stage of the litigation." *Vioxx*, 557 F.Supp.2d at 744. Accordingly, courts are more inclined to issue *Lone Pine* orders after extensive discovery has been conducted than early on in the litigation before plaintiffs are fully able to develop their case. *Compare id.* at 744 (where case had been ongoing for ten years with discovery of millions of pages of documents, hundreds of depositions, and approximately one thousand pretrial motions, "it is not too much to ask a Plaintiff to provide some kind of evidence to support [his or her] claim"), *and Fosamax*, 2012 WL 5877418 (*Lone Pine* order appropriate where targeted discovery had already resulted in eleven million pages of documents and twenty-four depositions), *with Roth*, 287 F.R.D. at 300 (denying request for a *Lone Pine* order at a "very early stage" in the litigation), *and Simeone*, 872 N.E.2d at 351–52 (trial court abused its discretion by entering a *Lone Pine* order prior to giving plaintiffs "the full range and benefit of discovery").

### E. Analysis

¶ 25 The Strudleys assert that the trial court erred by entering the *Lone Pine* order because it prevented them from proving their claims and was not necessary to protect against frivolous claims or unreasonably burdensome discovery. Conversely, the companies assert that the court properly entered the *Lone Pine* order because the case was complex, and the Strudleys' claims were vague and lacked an evidentiary basis. We agree with the Strudleys, and conclude that the *Lone Pine* order was not properly issued in this case.

¶ 26 Under *Direct Sales Tire Co.* and *Curtis*, the trial court was precluded from entering an order that required a prima facie showing before allowing discovery on issues central to the Strudleys' claims. *Direct Sales Tire Co.*, 686 P.2d at 1320; *Curtis*, 186 Colo. at 233, 526 P.2d at 1339; *see also Roth*, 287 F.R.D. at 300 (*Lone Pine* orders are

disfavored when they occur early in the litigation and deprive the opposing party of the benefit of discovery); *Simeone*, 872 N.E.2d at 351–52 (same).

¶ 27 Here, the court issued the *Lone Pine* order after initial disclosures, but before other discovery began. Although the initial disclosures provided the Strudleys with some information related to their claims, the disclosed information was insufficient to enable them to respond fully to the *Lone Pine* order. Thus, this case is distinguishable from those cases in which *Lone Pine* orders have been issued only after substantial discovery occurred. *See Fosamax*, 2012 WL 5877418; *Vioxx*, 557 F.Supp.2d at 744. Rather, this case is analogous to the proposed procedures rejected by the court in *Direct Sales Tire Co.*, because the *Lone Pine* order interfered with the full truth-seeking purpose of discovery. 686 P.2d at 1321. Additionally, unlike in *Leidholt*, the discovery that would have occurred but for the *Lone Pine* order would have related to the Strudleys' claims and not to a secondary issue such as punitive damages. 619 P.2d at 771; *cf. Direct Sales Tire Co.*, 686 P.2d at 1320.

¶ 28 Other courts presented with *Lone Pine* orders have reached similar conclusions. For example, in *Simeone*, a *Lone Pine* order was entered under similar circumstances to those presented here. 872 N.E.2d at 347–48. In concluding that the *Lone Pine* order was improper, the Ohio Court of Appeals noted:

> The most disturbing factor in this case is that the record before us indicates that there was no discovery provided by appellees at any time period during the pendency of the case. The fact that documents may have been provided to appellants before the suit is not an acceptable substitute for formal discovery proceedings. Once the Lone Pine order was in place and appellants' motion to compel was denied, appellants were effectively prevented from any type of discovery with which to build their case and proceed forward in order to meet the requirements of the order.

*Id.* at 352.

¶ 29 The companies, however, assert that recent amendments to the Colorado Rules of Civil Procedure have effectively overruled *Curtis* and *Direct Sales Tire Co.*, and therefore allow for *Lone Pine* orders. While we recognize that the supreme court revised the rules to create a "differential case management/early disclosure/limited discovery system," *see* Committee Comment to C.R.C.P. 16, we do not read these revisions to be so substantial as to effectively overrule the holdings in *Direct Sales Tire Co.* and *Curtis*.

¶ 30 Under the amended version of the rules, C.R.C.P. 16(b) provides a presumptive case management structure that allows discovery pursuant to C.R.C.P. 26(b)(2). However, under C.R.C.P. 16(c), a trial court may modify any aspect of the presumptive case management structure by entering a modified case management order. A proposed modified case management order should be supported by good cause. C.R.C.P. 16(c)(1), (2). According to the Committee Comment to Rule 16, "Rules 16 and 26 should work well in most cases filed in Colorado District Courts. However, where a case is complex or requires special treatment, the Rules provide flexibility so that the parties and Court can alter the procedure." Nevertheless, the committee noted that under these rules, "[i]t is expected that trial judges will assertively lead the management of cases to ensure that justice is served." *See also DCP Midstream, LP v. Anadarko Petroleum Corp.*, 2013 CO 36, ¶¶ 27, 32, 34, 303 P.3d 1187 (C.R.C.P. 16 and 26 require a court to exercise control over discovery so as to prevent unnecessary or abusive discovery requests).

¶ 31 C.R.C.P. 1(a) further provides that the rules of civil procedure "shall be liberally construed to secure the just, speedy, and inexpensive determination of every action."

¶ 32 While the above portions of the rules may afford trial courts more discretion than they previously had, we conclude that that discretion is not so broad as to allow courts to issue *Lone Pine* orders. The Committee Comment to Rule 16 provides that the rule was drafted "to emphasize and foster professionalism and to deemphasize sanctions for non-compliance." This language suggests that the drafters did not intend for Rule 16 to allow pretrial procedures, not otherwise

contemplated by the rules, which could result in the subsequent dismissal of a case with prejudice.

¶ 33 A comparison of the federal and Colorado rules of civil procedure further supports this result. In revising the Colorado Rules of Civil Procedure governing the pretrial process, the supreme court patterned many of the revisions after the December 1, 1993 revisions to the Federal Rules of Civil Procedure. *Id.* However, the court's revisions to C.R.C.P. 16 differ substantially from the rule's federal counterpart. Notably, the Colorado version of Rule 16 does not include the language relied upon by federal courts when issuing *Lone Pine* orders.[3] *See Roth*, 287 F.R.D. at 298; *compare* Fed.R.Civ.P. 16(c)(2), *with* C.R.C.P. 16.

¶ 34 C.R.C.P. 16 contains no language granting trial courts the broad discretion contemplated in the rule's federal counterpart. Had the supreme court intended to adopt a standard similar to that in the federal rules, it could have done so by patterning C.R.C.P. 16 after the federal rule, as it did with respect to the other discovery rules. *See* Committee Comment to C.R.C.P. 16. The supreme court did not do so, however, thus evidencing an intent to grant less discretion to trial courts than that afforded by the federal rules. Accordingly, we conclude that the amendments to the Colorado Rules of Civil Procedure do not effectively overrule *Curtis* and *Direct Sales Tire Co.*

¶ 35 We further conclude that *Curtis* and *Direct Sales Tire Co.* prohibited the trial court from entering the *Lone Pine* order here.

■ ¶ 36 However, even if we assume that the revisions to the Colorado Rules of Civil Procedure effectively overrule the holdings in *Curtis* and *Direct Sales Tire Co.*, federal cases discussing similar orders support our conclusion that the trial court erred by entering the *Lone Pine* order under the circumstances presented here. Unlike in the majority of cases allowing *Lone Pine* orders, this was not a mass tort case. Rather, it involved four family members suing four defendants. Further, it involved the alleged pollution of only one parcel of land.

¶ 37 Additionally, this case is not as complex as cases in other jurisdictions in which *Lone Pine* orders were issued. In their motion seeking the *Lone Pine* order, the companies alleged that this case was complex and "would entail significant discovery at substantial cost to the parties." Notably, however, they did not specify how the case was any more complex or cost intensive than an average toxic tort claim. At most, the companies asserted that expert testimony would be required in approximately six disciplines. This is markedly different from cases involving small numbers of parties in which *Lone Pine* orders have been issued based solely on the complexity of the issues. *See, e.g., Pinares*, 2011 WL 240512 (*Lone Pine* order allowed where plaintiff's discovery requests were massive and only tangentially related to their claims).

¶ 38 The companies assert, however, that a *Lone Pine* order was necessary in this case because the Strudleys' claims were vague, unsupported by evidence, and lacking in specificity.[4] They further assert that the *Lone Pine* order did not prejudice the Strudleys because, under C.R.C.P. 11(a), the Strudleys' claims must have been "well grounded in fact" before they were brought. We conclude, however, that existing procedures under the Colorado Rules of Civil Procedure sufficiently protect against meritless claims, and therefore, a *Lone Pine* order was not required solely on that basis. *See Digitek*, 264 F.R.D. at 259 (*Lone Pine* orders are appropriate only after existing procedural

---

3. As discussed above, courts have relied on Fed. R.Civ.P. 16(c)(2) to issue *Lone Pine* orders. Specifically, the rule allows a federal trial courts to "take appropriate action" to formulate and simplify issues, eliminate frivolous claims or defenses, and manage complex cases. Further subsection (f) of the rule provides authority for courts to sanction parties based on their failure to obey a pretrial order.

4. Specifically, the companies point to the lack of medical records connecting the Strudleys' alleged injuries to contaminants created by the drilling process. They also point to the lack of evidence connecting the alleged contaminants to their conduct in drilling the wells. Finally, the companies cite to their own evidence, which suggested that the Strudleys' land was never contaminated by the drilling activities, including the COGCC report that found no notable pollutants in the Strudleys' well water.

protections are exhausted). Motions to dismiss under C.R.C.P. 12(b) and motions for summary judgment under C.R.C.P. 56 provide adequate procedures for challenging claims lacking in merit. Similarly, C.R.C.P. 11(a) provides that where a complaint is filed in a manner inconsistent with the rule, "the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction."

¶ 39 The companies advanced no reason why these procedural protections were inadequate. Rather, they attempted to circumvent these procedures by moving for a *Lone Pine* order, and subsequently moving to dismiss the claims pursuant to that order. Under these circumstances, we see no reason why existing procedural mechanisms should be supplanted by ad hoc procedures not otherwise provided for under Colorado law. *See McManaway* 265 F.R.D. at 388 (a *Lone Pine* order should not be used as an alternative to a motion for summary judgment). If we were to allow *Lone Pine* orders, and the subsequent dismissal of cases under those orders, where summary judgment is still a viable means for addressing a meritless claim, we would eliminate the protective requirement under C.R.C.P. 56 that the moving party carry the initial burden to prove that a claim lacks evidentiary support. *See Kamuck*, 2012 WL 3864954 (declining to grant *Lone Pine* order when existing procedural devices were sufficient to protect against any shortcomings in plaintiffs' case); *Simeone*, 872 N.E.2d at 352 ("The moving party cannot discharge its initial burden under Rule 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in [Rule] 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support [its] claims.").

¶ 40 Finally, we note that other courts have declined to issue *Lone Pine* orders despite poorly pled complaints or the apparent lack of an evidentiary basis for a claim. *See, e.g., Roth*, 287 F.R.D. at 300 (*Lone Pine*

order was not appropriate before the initiation of discovery, "despite Defendants' contentions that Plaintiff's claims are either inadequately pled or will ultimately fail on their merits").

¶ 41 We thus conclude that the trial court erred as a matter of law, under *Direct Sales Tire Co.* and *Curtis*, when it entered the *Lone Pine* order in this case. The circumstances surrounding the case were not shown to be so extraordinary as to require departure from the existing rules of civil procedure. Further, by entering the order, the trial court unduly interfered with the Strudleys' opportunity to prove their claims against the companies. Accordingly, we reverse the trial court's *Lone Pine* order and the order of dismissal pursuant to the *Lone Pine* order, reinstate the Strudleys' claims, and remand to the trial court for further proceedings.[5]

¶ 42 The orders are reversed and the case is remanded to the trial court for proceedings consistent with this opinion.

JUDGE ROMÁN and JUDGE KAPELKE * concur.

---

5. Because we reverse on these grounds, we need not consider the Strudleys' remaining contentions on appeal.